MARIE W. COSTELLO, RESPONDENT, v. H. O. GOODWIN, ET AL., APPELLANTS.—210 S. W. 2d 375.

Kansas City Court of Appeals. Opinion delivered March 1, 1948.

540

*Guy W. Runnion, Wm. Dennis Bush* and *C. W. Prince* for appellants.

*George M. Hare* and *Charles V. Garnett* for respondent.

DEW, J.—This is an action brought in the Circuit Court of Jackson County, at Kansas City, by the respondent, the plaintiff, to enjoin the appellants, the defendants, from interfering with the plaintiff's possession and right of possession of a certain retail liquor store building in Jackson County, Missouri under any writ of restitution issued or to be issued by the division of the Circuit Court of the same county, at Independence, in a certain cause in the latter court wherein the appellant Goodwin herein was plaintiff, and certain third parties named were sole defendants. In the instant case a temporary injunction was issued, bond furnished, and upon final hearing, a decree was rendered making the injunction permanent, from which decree the defendants have appealed.

A motion to dismiss this appeal has been filed and is earnestly urged and as earnestly opposed. The ground of the motion is that the transcript herein was not filed in the trial court nor in this court within the time required by law and by the rules of court.

The record shows that the notice of appeal was filed in the trial court on March 11, 1947. Within 90 days thereafter, to wit: on June 3, 1947, the trial court, on the *ex parte* application of appellants, extended the time for filing the transcript to September 8, 1947, which was three days short of six months after the taking of the appeal. This order was authorized under Sections 135, 137, 138 and subsection (b) of Section 6 of the General Code, Laws of Missouri, 1943, pp. 353-397, and Supreme Court Rule 3.26. On September 19, 1947, ten days beyond the period of the last extension, and eight days after the expiration of six months from the date of the filing of the notice of appeal, the transcript was filed in the trial court, after leave to file the same was on that day given by that court on written

542

motion therefor accompanying the transcript, and without notice, consent or appearance on respondent's part, and a copy was filed in this court September 22, 1947.

The motion for leave to file the transcript alleged, in substance, that the transcript had been promptly ordered, and was prepared before the expiration of the extension allowed, except as to certain documentary exhibits in the possession of the counsel for the plaintiff; that he was out of the city and could not be reached by the court reporter so that the exhibits were not obtained until September 17, and the transcript was then accordingly completed and ready for filing on September 19; that said delay was not due to any fault or neglect on the appellants' part, but because of the inability to obtain the exhibits, as aforesaid, from the plaintiff's attorney and the physical inability of the reporter, on account of other and prior transcripts, to complete said transcript at an earlier date. Affidavits of the court reporter and associate counsel were filed tending to corroborate the above motion. One associate of appellants' counsel made affidavit that he had charge of the filing of the transcript and learned in August that the same was complete except for certain paid checks in evidence and in the possession of the respondent's attorney; that the court reporter informed him that she was trying to obtain the checks and he relied upon her to obtain them; that he then became ill and was confined in bed at home and did not know until September 11 that the exhibits had not been obtained from the respondent's attorney, who was reported still out of the city; that he examined the Civil Code and decided that the proper procedure was to complete the transcript as soon as possible and file a motion for leave to file it under Code Section 6(b) (2).

Counsel for respondent files herein his affidavit wherein he states that he left the city July 18, announcing to his office associates his intention to return by August 20. He in fact returned August 14, and wrote a letter on another matter to the attorney for the appellants on August 25; that he received no calls regarding the exhibits in this case until about September 16; denied that anyone reported his absence from the city after August 14; stated that he had a conference with appellants' attorney in the latter's office about August 22, regarding another case; that the first call he received regarding the exhibits in question was from the court reporter on September 16; that he examined the file during that day and delivered the exhibits to her the next morning.

Supreme Court Rule 3.26 prohibits the trial court from extending the time for filing of transcripts beyond six months from the date the notice of appeal was filed. Regardless of the failure to notify respondent of the motion for leave to file the transcript after six months had expired since the filing of the notice of appeal, the trial court had no authority to grant such leave. Under Supreme Court Rule 1.05,

appellants could have sought a stipulation permitting the omission of the exhibits referred to from the transcript and the filing of the same separately in this court on or before the setting of the case for hearing. If he had failed to obtain such stipulation he could then under Rule 1.30, have applied to this court for an extension of time for the filing of the transcript, after the expiration of the six months' period below, and upon proper notice to his adversary.

As the record now stands, the appeal is not invalid, but this court, under Rule 1.30, is authorized, in its discretion, to dismiss the appeal. The question remains whether, under all the circumstances shown, we should decline to consider the merits of the appeal and to rule that the appeal has been forfeited, or permit the appeal to stand and consider the transcript as if timely filed. Rule 1.15 authorizing suspension of certain rules of procedure pertaining to appeals does not appear to relate to the requirements fixing the periods within which the transcript shall be filed in the trial court or appellate court. Rule 1.28, however, requires all the rules to be "liberally construed to promote justice, to minimize the number of cases disposed of on procedural grounds and to facilitate and increase the disposition of cases on their merits". We take it that under that rule we may, if circumstances warrant, and justice under the conditions would thereby be promoted, and under the further provisions of Rule 1.30, decline to dismiss the appeal and proceed to hear the cause on its merits. See, also, Code Section 129; Clader v. City of Neosho, 354 Mo. 1190, 193 S. W. 2d 620.

While the evidence before us on the motion to dismiss the appeal shows positively that the appellants did not comply with the code provisions in regard to the time within which the transcript must be filed, and did not avail themselves of the remedies afforded them in such cases by the code and the rules, it, however, does appear that they made an honest effort to obtain the necessary exhibits for the transcript and did consult the code and rules of court, although erroneously construing them and overlooking some of their vital provisions. On the other hand, the evidence clearly indicates that during the period when the transcript must have been in preparation the counsel for respondent had possession of some of the exhibits desired to be shown therein and left the city without making them available to the appellants for such purpose. The perfection of an appeal may thus be seriously retarded, and the appellants and the courts thereby may be unnecessarily burdened with consequent proceedings arising out of such delay in the transcript. The delay was, in part, due to circumstances under the control of the party now objecting, and she was not misled or harmed in anywise by the irregularity. Upon serious consideration of all the peculiar facts in the matter before us we are unwilling to rule that the appellants' benefit of appeal has thus been forfeited, and will consider the transcript as if

timely filed. Leaman v. Campbell, 66 Tr. Lines, 355 Mo. 939, 199 S. W. 2d 359.

Further grounds for the dismissal of the appeal are that the statement of facts is insufficient, and that the points of error are merely abstract propositions of law, and do not show in what respects the trial court committed error. We have examined the statement and points of error so made and, while they are not wholly satisfactory in form, we believe them to comply substantially with the requirements. The motion to dismiss the appeal is, therefore, overruled.

Plaintiff's petition, in substance, alleges that she, at all times concerned, has been and is the owner in fee of an estate by the entirety in and to an undivided one-half of the real estate so described in the petition by virtue of a recorded deed dated August 4, 1939; that Grace C. Dodds has been and is the owner in fee of the remaining undivided one-half thereof; that there are certain improvements on said tract, including a retail liquor store building; that Goodwin, claiming as lessor of all such real estate under a lease from one Grace C. Dodds, obtained a final judgment in an unlawful detainer action in the Circuit Court of Jackson County at Independence, against Mike (Frank) Holland, Maxwell Costello, plaintiff's husband, and Sam Arello, in which action plaintiff here was not a party; that defendant Purdome is the sheriff of said county; that neither plaintiff nor her said husband ever authorized Grace C. Dodds, as cotenant, to enter into any contract of lease with Goodwin, nor has plaintiff ever ratified any lease contract between Grace C. Dodds and Goodwin; that since August 4, 1939, plaintiff has been and now is in possession of the retail liquor store building on said real estate, exercising full right to such possession, and that the said Goodwin never has been in possession thereof and is not entitled thereto; that Goodwin threatens to cause a writ of restitution to be issued in said unlawful detainer action to command defendant Purdome, sheriff, to restore to Goodwin possession of said liquor store building and will, under guise of such writ, if not enjoined, interfere with and disturb plaintiff in her possession thereof, to plaintiff's great and irreparable harm and damage, before the merits of this action can be determined; that she has no adequate remedy at law. Judgment is prayed finding that Goodwin has no right of possession of said retail liquor store building, and that plaintiff's right of possession is superior to any claim of defendant Goodwin to such possession, and that defendants be temporarily restrained, and upon hearing, be perpetually enjoined from disturbing or otherwise interfering with her said possession by or through any writ of restitution in said unlawful detainer action, and for further relief.

Defendants in their joint answer admit the alleged ownership, description, improvements, deed, lease and judgment in the unlawful detainer action, and the official capacity of defendant Purdome; that

plaintiff was not a party to said former action; that "plaintiff has been and is now in the actual possession of the property described therein, but deny that the plaintiff has a lawful right to said possession". The answer denies .the other allegations in the petition and reasserts defendants' rights to the writ of restitution in the former action in unlawful detainer, then pending on appeal; allege bad faith in bringing this action; assert knowledge on .the plaintiff's part of the lease from Dodds to Goodwin, and rentals paid thereunder; concealment of plaintiff's interest from defendant Goodwin, and plead estoppel by her conduct in said respects.

The basis of this action is the judgment and incidents thereof in an unlawful detainer action in the Independence Division of the Circuit Court of Jackson County, entitled "Goodwin v. Holland, et al.", in which the judgment for plaintiff therein was affirmed by this court in 200 S. W. 2d 588. The plaintiff Goodwin therein is codefendant in the present case. Both parties make reference to the above judgment and proceedings in their present pleadings and evidence, and direct this court's attention to the same, and to the record therein. We, therefore, take notice thereof. In that case an action for unlawful detainer was brought by H. O. Goodwin against Frank Holland, Sam Arello and Maxwell Costello for possession and rent of the same retail liquor store building in question here. In that case Goodwin claimed under a lease to him from Grace C. Dodds to the whole tract on which said store building is located, dated December 2, 1944, and purported to include all improvements and personal property on said tract owned by her, to be operated as a restaurant, night club, bar room, tavern, picnic grounds, tourist cabins, etc. Contemporaneous with said lease, Goodwin signed and delivered an instrument, addressed to Grace C. Dodds, to the effect that as a part of the consideration for said main lease Goodwin would accept Maxwell J. Costello as a subtenant to operate a retail package liquor store in one of the storerooms to be selected by Goodwin on a month to month rent basis at $40 a month. Subsequently, and after service of the statutory notice to vacate the storeroom on April 26, 1945, and upon failure of those defendants to vacate, Goodwin brought a suit in unlawful detainer in the Independence Division of said court and a judgment was rendered at the trial of said cause for the plaintiff therein against Maxwell Costello, Sam Arello and Frank Holland for possession of the liquor store building and $1 damage, a finding of the value of monthly rents and profits to be $40, or a total of $390 from June 1, 1945 to March 27, 1946, which was doubled to the sum of $780, plus double damages. The judgment ordered that the plaintiff recover $80 a month for rents and profits from April 23, 1946 until restitution, with costs. After trial the judgment was modified, and the cause dismissed as to Frank Holland.

546

In the course of the trial of the unlawful detainer suit Marie Costello, the plaintiff in the instant cause, appeared therein and moved for leave to file her intervening petition in which she set up ownership of her interest by the entirety in an undivided one-half of said real estate, and the ownership by Grace C. Dodds of the other one-half thereof, and that said lease had been entered into between Dodds and Goodwin without the knowledge of herself or her husband Maxwell Costello. She further alleged therein continuous possession of the real estate since August 4, 1939. On objection made, the court refused her permission to file the intervening petition. It is the judgment in that cause which the plaintiff in the instant case contends, by her petition herein, is in nowise binding upon her, since she was not a party thereto, and she seeks to enjoin said Goodwin and the sheriff from disturbing her alleged possession of the liquor store situated on said premises under any writ of restitution issued or to be issued on such judgment. It was admitted that, unless enjoined herein, Goodwin would order restitution under said judgment to dispossess Marie Costello.

Upon the trial of the instant case the motion of the defendants to dissolve the temporary injunction was denied and the injunction was made permanent. The court further found that the plaintiff's right of possession was superior to the right or claim to such possession of defendant Goodwin.

In addition to the uncontroverted facts, as stated, plaintiff's testimony further tended to show that on part of the tract claimed by Goodwin under lease from Grace C. Dodds there were a tavern, six cabins and a filling station, all operated as one enterprise, and on the remaining part was a liquor store building operated separately as such; that in 1943, plaintiff and her husband Maxwell Costello operated the liquor store together, and when that year he left for Arizona for his health, he turned over to plaintiff his interest in the liquor store, and that plaintiff has been in possession and operation thereof ever since; that Frank Holland and Sam Arello, defendants in the prior unlawful detainer suit, were her employees in charge of the management of the store; that the several rental checks of $40 each in evidence, signed and delivered by Sam Arello to Goodwin, were without her knowledge or authority, and while she was in Arizona with her husband Maxwell Costello, then in ill health, and that Arello issued them to Goodwin merely upon his exhibition of the lease from Grace Dodds and his demand for such rental payments; that she knew that Goodwin had rented the tavern, but did not know that Mrs. Dodds had tried to lease the liquor store that witness had been operating all the time; that she and her husband had authorized Mrs. Dodds to rent the tavern and cabins but not the liquor store, and did not know that the store had been leased until Maxwell Costello was served with summons in the unlawful detainer action while they were

in Arizona; that she got no rent from the other part of the real estate Mrs. Dodds had leased to Goodwin; that "if she wanted to rent the tavern and cabins she could do. that, we would keep the liquor store"; "The understanding was that we were to have the liquor store and she (Grace Dodds) was to rent the tavern and the cabins"; that she and her husband sold the contents and fixtures in the tavern to Frank Holland, and her husband wrote Goodwin regarding the same; that during most of this period Costello was in Arizona and part of the time in a sanitarium there, and when home in Kansas City, was confined to his bed.

Frank Holland, in plaintiff's behalf, testified that he had been associated with Maxwell Costello in the operation of the tavern in 1943 or 1944, and thereafter it was vacant until Goodwin moved in; that witness and Costello sold the fixtures to Goodwin; that witness had no interest in the liquor store, but "looked after it for Maxwell Costello, who was away sick", on a profit basis; that rent for the liquor store was paid to Goodwin at $40 a month until witness left in July, 1945.

Sam Arello, another witness for plaintiff, testified that he is still employed in the liquor store; that it is owned by Marie Costello; that she has the license in her name for the first time; that before Maxwell Costello left, he and Mrs. Costello owned the store together; that shortly after September 2, 1944, Goodwin came to the store' and showed him a lease or written instrument and demanded rent·for the store; that witness had received no instructions from the Costellos to pay any such rent; that he paid the rent as demanded by Goodwin; that when the Costellos came back they "were sick" about it, and witness had known nothing about any lease except what Goodwin told him; that the last check accepted was for May, 1945, and after that checks were tendered but rejected, because suit had been started. Several of the checks are shown for $40 each, all signed "Glen Oaks —Sam Arello".

Plaintiff, being recalled, testified that she had the license to the store changed to her name upon the suggestion that it would eliminate the necessity of sending papers to her husband for signature and notarization; that she has been interested with her husband in the store since it started, and was operating it for her living.

Defendant Goodwin testified that he first negotiated with Frank Holland for a lease of "this property out there"; Holland owned the fixtures; Arello sent defendant to Mrs. Dodds, who told him she owned the place; that a lease was prepared by Mrs. Dodds' attorney and signed by her and Goodwin, and a rider was attached in which witness agreed to sublease the liquor store building to Maxwell Costello at $40 a month; the attorney then prepared written notice to Arello that the property had been leased to Goodwin and to pay rent to him thereafter; defendant Goodwin gave the notice to Arello, who

turned over the keys to him; witness has kept up the $100 payments to Mrs. Dodds ever since for the whole tract, and collected the $40 a month for the liquor store until the action for the unlawful detainer was instituted; that some eleven checks in all were delivered to him, including those rejected, and one, he said, was signed by Marie Costello; that he wanted the possession of the liquor store because it was not being run as a decent place, and that, over his protests, liquors were sold to Goodwin's employees, and it was difficult to keep help; that Marie Costello is now in possession of the store and has been for some time.

The plaintiff did not have an adequate remedy at law by motion to quash the execution in the unlawful detainer suit. Section 1387, R. S. Mo., 1939, provides:

"If any person against whose property any execution or order of sale shall be issued, apply to any judge of the court out of which the same may have been issued, by petition, verified by oath or affirmation, setting forth good cause why same ought to be stayed, set aside or quashed, reasonable notice of such intended application being previously given to the opposite party, his attorney of record or agent, such judge shall thereupon hear the complaint".

While it has been indicated by the Supreme Court that the above section permits a person other than a party to the action to file motion to quash execution therein, (Scrutchfield v. Sauter, 119 Mo. 615, 24 S. W. 137), the case of Carter v. Clymer, 81 Mo. 122, holding otherwise, has recently been approved in St. John Levee and Drainage District v. Barnett, 349 Mo. 1037, 163 S. W. 2d 915. In view of the admissions in the pleadings and by counsel in the trial of the cause, we conclude that a cause of action in equity is presented by the pleadings.

Appellants first contend that respondent is estopped because she remained silent while she knew another party was leasing her property to someone ignorant of her title. The building was occupied when Goodwin made the lease. He must have taken notice of that fact. He was content to rely on Mrs. Dodds' statement that she was the sole owner and in rightful possession. He determined for himself who the tenants and occupants were, and their interests. The evidence is that respondent did not know of the lease, nor did she learn of it until several months later in Arizona, when her husband, confined there by illness, was served in the unlawful detainer action. It is true that respondent's employee in charge of the store, upon Goodwin's demand, paid several monthly rentals to him for the store. The employee had no instructions or authority from respondent or her husband to make such payments, and respondent did not know of any such payments until the unlawful detainer suit was brought. She got no part of the rent paid by Goodwin to Mrs. Dodds and claimed

none. She sought to intervene in the unlawful detainer suit to assert her rights, but was not permitted to do so. Under such evidence we cannot hold that she is now estopped as contended.

Appellants make the further point that a judgment of unlawful detainer is binding on the defendants therein, the members of their families, tenants, agents and employees, who, though strangers to the record, have entered into possession *after* the commencement of such action. This principle cannot apply here, since all the evidence herein tends to prove that respondent's possession *antedated* the commencement of the action for unlawful detainer and has continued ever since. Whether or not the judgment in the unlawful detainer suit can be construed to determine that the *exclusive* possession of the building was then in the defendants therein, the plaintiff in the present case was not a party in that case under any theory and is not bound thereby. Brewing Co. v. Saxy, et ux., 273 Mo. 159, 201 S. W. 67.

Finally, the appellants assert that a court in a suit in equity will not enjoin the enforcement of a judgment in forcible entry and detainer; that the court at Independence has exclusive control over its own process, and no other court has jurisdiction to enjoin execution thereof. Respondent here was not a party to that cause; no judgment was rendered against her therein; the judgment therein is in no way binding on respondent here; no writ of restitution therein against the defendants in that cause could lawfully disturb the possession or right of possession of respondent here in the liquor store building, nor does she seek to interfere with the execution of such writ as against the only parties defendant in that cause. However, it was admitted that unless enjoined herein, defendants intend to dispossess respondent by and through a writ of restitution in the unlawful detainer suit. She, a stranger to that suit, is not permitted to file a motion to quash the execution. Drainage District v. Barnett, supra. Nor should it be necessary, if the execution be enforced against the judgment defendants only. Under the record before us, respondent is entitled to the protection and relief for which she prays. The injunction granted herein to that effect does not unlawfully interfere with the proper execution of a proper writ of restitution issued or to be issued by the Independence Division of the court in the unlawful detainer action wherein she was not a party. Judgment affirmed. All concur.