**PRUDOT v. STEVENS.**

No. 21968.

Kansas City Court of Appeals.

Missouri.

April 5, 1954.

S. Ralph Stone, Independence, Walter A. Raymond, Kansas City, for appellant.

Gilbert R. Titus, Independence, for respondent.

CAVE, Presiding Judge.

This is an appeal from a judgment modifying a prior divorce decree with reference to the custody of two children.

On January 21, 1948, the Circuit Court of Jackson County, Missouri, granted plaintiff a divorce from defendant and awarded her the custody of two minor children, James Vernon Stevens, then 5 years of age, and Robert Ernest Stevens, then 1 year of age, with the right of visitation by the defendant; and allowed plaintiff $15 per week for the support of the children.

In July, 1950, defendant filed a motion to modify the decree by transferring custody of the children to him, for the reason that plaintiff had removed the children from the jurisdiction of the court of Jackson County, Missouri, without permission of the court, and had taken them to another state, thereby depriving him of his right of visitation. In October of that year, the motion was sustained, by agreement of the parties, and the order of custody was modified to give defendant custody of the children during the summer vacation of each year, and plaintiff the custody during the school term, and also the right of removing the children from Missouri to Indiana, and required the

defendant to pay the plaintiff $15 per week during the time she had custody of the children. The payments were regularly made and are not an issue at this time.

In July, 1952, defendant filed a second motion to modify the decree, and asked that he be given exclusive custody of the children for the reason that plaintiff, during the month of November, 1951, had abandoned the children by leaving them with her mother and father in Lynnville, Indiana, and going to Phoenix, Arizona; that both her mother and father work and are not in a position to take care of the children; that when he received the children for the summer vacation of 1952, they were in a highly nervous state, but that since he has had them, they are greatly improved in health and have begged him not to send them back to their grandparents; that he has a good home and is in a position to give them proper care, education and religious training.

After a trial, the court sustained defendant's motion, awarding defendant the custody of the two children with the right of plaintiff to visit them "at all reasonable hours at the home of the defendant". After moving unsuccessfully for a new trial, plaintiff brings this appeal.

She contends that the evidence is insufficient to prove a substantial change of conditions since the first order of modification made in 1950 to justify the court in making this second order of modification; and that the welfare of the children does not require a change of custody.

In a proceeding of this nature, it is the duty of this court to review the evidence and the law to determine whether the moving party has shown by substantial and credible evidence that there has been such a change of conditions and circumstances, occurring since the entry of the first modification of the decree, sufficient to require a change in the custodial arrangements. In determining this question, the welfare of the children is the supreme and controlling consideration. A motion to modify a divorce decree is an independent proceeding and the motion is treated as a petition in an original action; it must state a claim upon which relief may be granted and must be based upon new facts, conditions and circumstances arising or coming into existence since the rendition of the prior decree, and the burden of proof rests upon the movant to establish such new facts, conditions and circumstances. Hayes v. Hayes, Mo.Sup., 252 S.W.2d 323; Baer v. Baer, Mo.App., 51 S.W.2d 873; Drew v. Drew, Mo.App., 186 S.W.2d 858. We recognize the rule that where there is a conflict in the testimony, due deference is given the findings of the trial court, but we are not bound by such findings, because if that were so there would be little or no occasion to appeal in any case in which the rule of due deference applies. It remains our duty to reach our own conclusions and render such judgment as the evidence, in our opinion, warrants. Elliston v. Elliston, Mo.App., 215 S.W.2d 63, 69.

With these general principles of law in mind, we examine the evidence.

Plaintiff and defendant were married in May, 1941, separated in October, 1947, and were divorced in January, 1948. At the time of and prior to their marriage, they both lived in or near Lynnville, Indiana, and after their marriage they lived with plaintiff's parents in Lynnville for a time, and then defendant was inducted into the military service and was away for approximately 30 months. During that time, the older child was born. After defendant returned from military service, they lived with plaintiff's parents for a short time, and eventually moved to Jackson County, Missouri. The younger child was delivered by a Caesarean operation. After being divorced in January, 1948, plaintiff married her present husband, Prudot, in September, 1948, and defendant married his present wife in May, 1948. Mr. Prudot had been divorced by a former wife by whom he had four children and in that proceeding he was required to contribute to their support. In 1950, plaintiff and Prudot left Jackson County, Missouri, and moved to Lynnville, Indiana, and shortly thereafter defendant filed a motion to modify the divorce decree relative to the custody of the two children,

because plaintiff had removed them from the jurisdiction of the Circuit Court of Jackson County, and denied him the right of visitation which was allowed under the divorce decree. This motion was sustained by consent of the parties and the decree was modified, giving custody of the two children to the plaintiff during the school term and to the defendant during the summer vacation. That order of modification was entered October 20, 1950. The plaintiff had the children with her in Lynnville during that school term and defendant had them with him in Jackson County during the summer of 1951, and then returned them to the plaintiff in time for the fall term of school. In December, 1951, plaintiff left Lynnville with her husband and went to Phoenix, Arizona, leaving the children with her mother and father in Lynnville. This move is the cause of the present controversy and led to the filing of the instant motion.

Defendant testified at the hearing on this motion in February, 1953, that the youngest child was then six years of age and the eldest would soon be ten; that he was a police officer of the city of Independence with a salary of $278 per month; that when he went to Lynnville in May, 1952, to get the children, he found them staying at the home of their grandparents; that this home is modern and is located in the business section of Lynnville and on the main highway; that the grandfather operates a barbershop in the home and the grandmother cooks at the school where hot lunches are served; that the older boy was in school and the youngest was there with the grandfather; that he learned the plaintiff was then in Phoenix, Arizona, "selling something"; that she had been there since the prior December; that the physical condition of the youngest boy was apparently very good, but the older boy was in a very nervous condition and quite upset; that he was on crutches due to a condition which had existed for approximately three years; that his nervous condition was very bad and at nights he would wake up screaming for "daddy to come and get him"; that when he returned to Missouri with the boys, he took the older one to the juvenile authorities and they referred him to a doctor who prescribed certain treatment and exercises, which he had faithfully carried out; that on a prior occasion when he had gone to Lynnville to see the boys, he found the youngest one at the great-grandmother's home in a town about 10 miles from Lynnville; that he felt the plaintiff (the mother) was neglecting the children and he filed the present motion for exclusive custody and got service on her at Phoenix; that shortly thereafter, she came to Jackson County and he permitted her to see the children at various times; that on August 25, 1952, plaintiff came to his home and stated that she wanted to take the boys back to Indiana with her; that he refused this request, which precipitated an argument and the plaintiff used violent and improper language and he told the boys to go into the house; that his present wife started into the house with the boys when the plaintiff called her vile names and struck her with a purse, and a fight between the two women ensued and he separated them; plaintiff was arrested and put under bond and the case was continued, pending the final disposition of this motion; that he gave consent for the plaintiff to go to the school and visit the boys, and on one occasion she and her mother were there and created such a disturbance that the principal ordered the defendant to take the boys home; that from letters and cards written the boys by the plaintiff he had learned that she had, at different times been in the states of Oklahoma, New Mexico, California and Arizona; that since he brought the boys to Missouri in 1952, he has followed the directions of the doctor for treatment of the older boy and that he has been off his crutches since January, 1953, and is improving rapidly; that the older boy has been afflicted with a speech impediment, but that this condition was much improved and was noticeable only when the boy was upset or excited; and that the children have begged him not to send them back to Indiana.

Defendant's present wife testified that she had had the boys since May, 1952; that she took good care of them and looked after their needs; that she loved the boys like

they were her own flesh and blood and would see that they received proper schooling and religious training; that when she first got the older boy, he stuttered so you could hardly understand him, but that he had been taking speech lessons and was much improved; that they have him under the care of a doctor and follow instructions for improving his health; that this boy had nightmares for the first few weeks after returning to their home in 1952, but that condition had disappeared and he seemed happy and well satisfied; that when plaintiff came to get the children in August, she and the boys were with the defendant in the yard until plaintiff began to use vulgar language and defendant asked her to take the children into the house, at which time plaintiff struck her and there was a fight, and plaintiff was arrested; that the older boy told her that he once ran away from the grandparents home and attempted to hitchhike to Independence, and that if he was sent back he would do the same thing again.

Several neighbors testified that defendant's home was nice, clean, and well kept; that the two boys were well behaved and seemed happy; that defendant and his present wife were good to the boys and were of good moral character.

Plaintiff testified that at the time of the trial on the motion, she and her husband were buying a home from her father in Lynnville and planned to live there, although it was rented at that particular time; that her father operates a barbershop in his home, is the town marshal and also a justice of the peace; that in the summer and fall of 1951, she was not in good health and suffered from bronchial asthma; that her doctor suggested she should have a change of climate; that she and her husband went to Phoenix, Arizona, and that she is feeling much better; that she was planning to return to Lynnville when she was served with notice of the filing of the present motion in July, 1952; that as soon as she could, she came direct to Jackson County; that she went to defendant's home to see the boys and visited with them, in

defendant's presence, for about an hour, whereupon defendant said it was time for the boys to take a nap and sent them to bed; that she went back the next day and about the same thing occurred; that defendant refused to permit her to take the boys over to her aunt's for dinner; that she went back to see them on the birthday of the youngest child and took some toys; that she telephoned defendant's home several times and was told that the boys were not present, although she could hear their voices in the background; that the latter part of August, when it was time for her to take the boys back to Indiana, she went for them and defendant refused her permission to take them away; that she was talking with the children when defendant's wife struck her; that she started to run to the gate, but defendant caught her and held her while his wife "beat her up good"; that she did not call defendant's wife vile names, but that defendant's wife called her vulgar names; that she was arrested and placed under bond and has not been permitted to see the children since that time; that she went to the school and saw the boys on one occasion and the next day took her mother, and that defendant was there at that time and took the boys home; that she did not create a disturbance at the school; that if she is given custody of the boys, she is well enough to care for them and will return to Lynnville where they have a nice home; that the boys will be placed in school and will be taken to Sunday school and church; that the eldest boy will be under the care of a specialist; that her present husband wants her to have the boys and is willing to support them; that he earns $450 to $500 per month; that the home which she and her husband are purchasing in Lynnville is modern in all respects; has four rooms downstairs and a large upstairs room for the boys; two porches and a large yard; that the school is one and one-half blocks from this home and a church is nearby where they all attend Sunday school and church.

The record discloses that the older boy received an injury or contracted an infec-

tion of his hip in the summer of 1949, and plaintiff took him to the Mercy Hospital in Kansas City, where he remained for several weeks and received treatment from Dr. Francisco, a bone specialist, who prescribed certain exercises and treatment and told plaintiff it would probably be three or four years before the boy would be able to use his leg without the aid of crutches. Plaintiff testified that she carried out the instructions of the doctor. When she moved from Independence, Missouri, to Lynnville, in the summer of 1950, she took the boy to Dr. Stern of Evansville, Indiana, who was a bone specialist and who had been recommended to her by Dr. Francisco; that Dr. Stern recommended substantially the same treatment she had been giving the boy; that she would take him to Dr. Stern about every six weeks, and that the boy was gradually improving in health. He was still on crutches in May, 1952, when defendant brought him to Missouri, but at the time of the trial in February, 1953, he was walking without a crutch. During all this time the boy had been attending school and making good grades. The younger boy was a healthy, normal youngster.

The real controversy in this case, and the question which gives us concern, is whether the fact that the plaintiff left the boys with her parents in Lynnville and went to Phoenix for six or seven months, and possibly made other short trips with her husband, justifies the court, under all the circumstances, in denying her part time custody of the boys.

Concerning her reason for going to Phoenix, she testified that in the summer and fall of 1951, she was ill and severely afflicted with bronchial asthma; that she received medical treatment for some time and finally the doctor urged her to go to Phoenix for relief; that in November, 1951, she wrote the defendant concerning the situation and asked him if she could take the boys, and that he replied that it would be all right for her to go, but that she should leave the boys with her parents. This evidence is corroborated by the testimony of plaintiff's mother and father, and is undenied by the defendant. Furthermore, on February 13, 1952, the defendant wrote the grandmother stating, in effect, that since plaintiff was sick it was better for the grandmother to have the boys; that he was glad she did have them; and that "I won't bother nobody as long as you take care of them * * *". At the time of the trial, plaintiff was unable to produce the letter which defendant had written her in November, 1951, but it was later found and attached to the motion for new trial and called to the attention of the trial court. This letter was dated November 25, 1951, and contained this language: "In regard to your last letter, I have give it a lot of thought. I am willing for you to leave the boys with your folks. But don't take them with you. I won't stand for it if you do." It is perfectly apparent that defendant knew plaintiff was going to Phoenix for her health and that it was at his suggestion, in fact, his demand, that she left the boys with her parents. Defendant was thoroughly familiar with the kind, type and surroundings of the home of the grandparents, and also familiar with their character, disposition and qualifications to attend to the boys while the plaintiff was away. While he testified that the grandmother prepared hot lunches at the school, it is undisputed that she does this type of work only one day each week and two days in each fourth week; that when so employed she works from 8 a. m. to 3 p. m., and that the older boy was attending the same school during those hours.

There is evidence that plaintiff made two week end trips from Phoenix to points in California with her husband and some friends; also, that she had gone with her husband to Oklahoma when he visited his children.

The evidence is conflicting in certain particulars. Defendant and his wife testified that the boys were nervous and upset when he brought them to Missouri in May, 1952, and that the older boy had nightmares for a few weeks thereafter, but that, since coming to his home, they were happy, contented and improving in health. On the contrary, plaintiff testified that when she received the boys in August, 1951, they were nervous

and upset for a time, but after being returned to Lynnville they were happy with their playmates and the older boy was improving in health, and that they did not want to return to their father in Missouri. There is also sharp conflict relative to who was the aggressor in the fight between the women in August, 1952, and whether plaintiff caused a disturbance at the school. The school principal did not testify.

It is quite evident that the plaintiff and her mother and father love these two boys and want them in their home. It is also true that the defendant (the father) and his present wife love the boys and want their custody. It is a distressing fact that the parents live several hundred miles apart and the mere right of visitation in either parent is of little comfort, and, in effect, denies to the children the love and affection of the parent who has only the right of visitation.

■ The parties cite many authorities discussing the vexing question of the custody of small children. The one principle upon which all cases agree is that the welfare of the children is the primary and dominant issue, the solution of which is frequently very difficult. Each case must be decided on the particular facts in evidence. It would serve no useful purpose to lengthen this opinion by reviewing the many cases cited in the briefs.

■ After careful consideration of all the facts and circumstances surrounding plaintiff's decision to leave the children with her parents while she was in Phoenix for the benefit of her health, we conclude that the court was not justified in sustaining defendant's motion and depriving plaintiff of part time custody of her children. We believe the first order of modification giving plaintiff custody during the school term and defendant custody during the summer vacation is the most equitable, fair and just arrangement which can be made under all the circumstances, and will result in the greatest benefit to the children.

■ In the argument portion of his brief, defendant suggests that the appeal should be dismissed for the reason that the transcript was not filed within the time provided by law and the rules of court. The transcript discloses that the judgment was rendered on March 12, 1953; a motion for new trial was duly filed and overruled on April 22, and on the same day plaintiff filed her notice of appeal. Thereafter the trial court entered this order: "Now on this 30th day of July, 1953, for good cause shown, the time for filing appellant's transcript on appeal in the above entitled cause is hereby extended until * * * October 20, 1953". Thus the order extending the time was made 8 days after the 90 day period had expired as provided in Section 512.-130, RSMo 1949, V.A.M.S.

Defendant argues that since the transcript was not filed within 90 days after the filing of the notice of appeal, the court could not extend the time unless there was a motion filed and notice given as provided in Section 506.060. Granting that to be true, there is nothing before this court to indicate that a proper motion was not filed except the statement in defendant's brief that no such motion was filed. That statement is not verified and does not prove itself. The trial court being a court of general jurisdiction, it will be presumed that the court found all the facts necessary to its jurisdiction and authority for making the order extending the time. The order recites that "for good cause shown" the time is extended to a day certain which was within the six months' period permitted by Rule 3.26, 42 V.A.M.S.

■ Furthermore, the case has been fully briefed, argued and submitted. We have decided, in the interest of justice, to consider and dispose of the case on the merits. In Baldwin v. Desgranges, 355 Mo. 959, 199 S.W.2d 353, 355 the court discussed the question of delinquency in filing a transcript and said: "Only in exceptional circumstances could an action be *justly* disposed of by dismissing a meritorious appeal. The spirit of the new civil code undoubtedly is to dispose of appealed causes on their merits unless delinquency in the procedural steps to appeal have been too grave to condone * * *". See also

Costello v. Goodwin, 240 Mo.App. 538, 210 S.W.2d 375; Morris Plan Co. of Kansas v. Jenkins, Mo.App., 216 S.W.2d 160.

The motion to dismiss the appeal is overruled.

It follows that the order of modification entered March 12, 1953, be reversed and the cause remanded with directions to dismiss defendant's pending motion.

All concur.