**Donna M. DERRINGER, Plaintiff-Appellant,**

v.

**Edward L. DERRINGER, Defendant-Respondent.**

No. 23947.

Kansas City Court of Appeals.

Missouri.

April 6, 1964.

Hammond C. Woods, Kansas City, for appellant.

W. B. Ennis, Ennis, Browne & Martin, Kansas City, for respondent.

MAUGHMER, Commissioner.

This is an appeal from a judgment order modifying a divorce decree with respect to custody of a minor child.

Appellant correctly points out that in this state a divorce action is a statutory suit at law and not in equity, but it does partake of the nature of a suit in equity and is considered de novo on appeal. It is our duty to consider, weigh and evaluate all the competent evidence tending to prove or refute the essential factual issues and reach our own findings. In doing so, we are not bound by the trial court's findings, but we do accord those findings deference, especially as to the credibility of the witnesses who appeared before the trial court. May v. May, Mo.App., 294 S.W.2d 627; Eikermann v. Eikermann, Mo.App., 283 S.W.2d 391; Clark v. Clark, Mo.App., 306 S.W.2d 641, 646.

Plaintiff, Donna Mae Derringer, was granted an absolute divorce from Edward Lee Derringer on October 16, 1962, by the Circuit Court of Jackson County, Missouri. It was a default decree with personal service on defendant. By this judgment plaintiff was awarded "the care, custody and control" of the minor child Edward Lee Derringer, Jr., who had been born on November 28, 1960, with defendant having "the right and privilege of seeing and visiting said minor child at all reasonable times and places".

On March 29, 1963, defendant filed his motion for modification, praying that the mother be divested of the "care, custody and control" of the child and that same be awarded to the defendant father. A hearing was held on June 24, 1963, and on the same date the court entered its judgment modifying the original decree of divorce as follows:

"* * * the care, custody and control of the minor child, Edward L. Derringer, Jr. * * * is hereby given to the defendant, to live with his parents, Daniel and Nelldean Derringer, at 7904 Leeds Road".

The mother appellant has dully perfected an appeal. She asserts that (1) "The Court erred * * * with reference to the custody of the minor child because such modifi-

cation is against the law", and (2) "The Court erred in modifying the decree because the decree penalizes the minor child * * * for the alleged indiscretions of the plaintiff in violation of the policy of the courts of Missouri * * *".

Respondent has moved to dismiss the appeal for alleged noncompliance with Rule 83.05(c), V.A.M.R. which requires a "fair and concise statement of the facts". We overrule the motion and shall consider the appeal on its merits.

■ We note that the child Edward, Jr. was not quite two years old when his parents were divorced, was 28 months of age when the motion to modify was filed and 31 months old when the judgment of modification was entered. The law is clear that only matters which have happened since the divorce are competent to sustain a motion to modify. In Hawkins v. Thompson, Mo.App., 210 S.W.2d 747, 752, the court said:

"Matters which happened before the divorce decree or before the hearing on the first motion to modify are res judicata and the court should be concerned only with the question whether since the rendition of those decrees there has been such a change in conditions as to materially effect the welfare of the child. *As always the welfare of the child is the first and supreme consideration*". (Italics added.)

See also Brake v. Brake, Mo.App., 244 S.W.2d 786; Paxton v. Paxton, Mo.App., 319 S.W.2d 280.

■ We summarize the evidence presented, keeping in mind that there must be a showing of changed conditions since the original decree and never forgetting that the personal welfare of the child is the paramount question to be answered.

■ Six witnesses were offered for the father movant and respondent here. Mr. Derringer himself testified that he was 24 years of age, had been employed for four years as cashier-bookkeeper for an A & P Food Store, and that he resided with his parents in Kansas City, Missouri. He said his father and mother were respectively, aged 46 and 41 years. He described their home as a "two-bedroom home, large front room, living room, dining room, kitchen, breezeway, garage and full basement", with himself and his parents the only occupants. Mr. Derringer said that in the latter part of January, 1963, a Mrs. William Wayne Hoover telephoned to him and said that her husband was living with Donna (Mrs. Derringer) at 1928 Norton Street, Independence, Missouri. There was no objection to this testimony. On January 31, Mr. Derringer said he "got off work at 10:00 o'clock. I watched this place. His car was parked in the back and was not moved all evening. I went back home. I was over there about 45 minutes, and there was no lights on in the apartment, and later on that evening I went back over, his car was still there, and so I had—I didn't know who to get for a witness, so I stopped a patrolman and I got a statement from him that his car was parked there and he identified the license and checked it out through the bureau and it was his car. And the next morning I took my mother, went back over about 6:00 o'clock and it was about 7:15 she came out of the house, went across the street and took the boy over to the baby sitter and she came back, and he was with her and they came around the house and got in his car". He said her apartment was a one-room kitchenette, with private bath, and a divan which was convertible into a bed. It was Mr. Derringer's testimony that on the following Saturday night, his folks were called to go to his former wife's apartment, having been advised that she had tried to commit suicide. It seems that Mrs. Derringer had taken tranquilizer pills and kept calling for William Wayne Hoover.

About January 24, Mrs. Derringer moved to 24th and Hardesty Streets. Mr. Hoover lived at or near the same address. Derringer went there one day to "pick up the boy"

and Hoover came out and told him to leave. On another occasion Hoover called Derringer at his place of work and told him if "I didn't leave her alone he would stomp me good". Derringer said Hoover's car was parked near Mrs. Derringer's apartment night after night.

Mary Lou Koch, former wife of Mr. Hoover, said her husband brought home a letter written by Mrs. Derringer saying she was going to commit suicide if "she couldn't have Wayne".

Mrs. Alice Riggins, owner of the Norton Street property, testified that she usually left for work at about 6:00 or 6:30 a. m. and on occasions had seen Hoover's car parked there when she left for work.

Mr. William Shinn resided at the Norton Street address when Mrs. Derringer lived there. He saw Mr. Hoover there on numerous occasions at various hours of the night and early in the mornings. He said he called Hoover when Mrs. Derringer was calling for him after she had taken the tranquilizers and that Mr. Hoover came over and took Mrs. Derringer for a walk.

Mr. and Mrs. Daniel Derringer, paternal grandparents with whom the child was to live under the modification order, both testified. They expressed willingness to keep the boy and both agreed and were quite willing for Mrs. Derringer to quit working and care for the grandchild. Mr. Derringer is a long time employee of the Kansas City Transit Company, Inc. He works as a bus operator.

The plaintiff, Donna Derringer, said she began keeping company with Mr. Hoover prior to her divorce; that they both had worked at the same place. In her direct testimony Mrs. Derringer was not questioned about, nor did she offer any explanation or refutation of the charges leveled against her. When opposing counsel asked if she wanted to make any explanations, her lawyer answered she was under no obligation to do so. The Court then indicated that it would inquire into these matters. Thereupon, Mrs. Derringer, in response to questions from her attorney, denied that "she had been living in open and notorious adultery with Wayne Hoover". She denied that Hoover had lived with her or stayed all night with her. She said that on one occasion when Hoover's car was parked near her apartment all night that his car wouldn't start, but that he drove it away the next morning. She said Hoover took her to work in the mornings. Mrs. Derringer said she was not employed at the time of the trial but was receiving $40 per week unemployment compensation. Her apartment rent was $75 per month. She testified that Hoover's car was parked near her place at 24th and Hardesty because Hoover had moved close by, and he left his car parked at her place to keep Mr. Derringer "from harrassing me".

This case is somewhat similar as to both facts and results to the case of Yount v. Yount, 366 S.W.2d 744, 747, 748, 749, decided recently by this court. There the divorce decree gave child custody to the mother. On the father's motion to modify, the court gave custody to the paternal grandparents. This court affirmed. We quote from the opinion:

"Appellant testified she met Ladd through her work. She knew he was a married man, * * *. She freely admitted her numerous dates with him. * * * He has stopped at her house often until the early morning hours. He has upon occasion 'to protect her from her ex-husband' stayed all night. * * * She asserts nothing improper ever occurred unless the dating, kissing and embracing is so regarded. * * * She stated, 'A lot of instances Mr. Ladd stays very, very late. He might be there until two or three o'clock in the morning, and he will leave and I have had calls from him as early as four o'clock in the morning, and he said, "Can I come over and have breakfast?" And he would show up at four-fifteen'.

* * * * * *

"We acknowledge the general rule that the fact a mother is guilty of adultery does not necessarily disqualify her to have custody of her children. The moral unfitness of a mother must have a bearing on the welfare of the child before it can be sufficient to deprive her of her custody. 17A Am.Jur., Divorce and Separation, Sec. 820, p. 16.

\* \* \* \* \* \*

"We think the record justifies the placing of the custody of these four children with the paternal grandmother. We note the father is also a member of that household.

\* \* \* \* \* \*

"Whether this custody in the paternal grandmother will be permanent or merely temporary is a matter that can be left safely with the trial judge who will act in accordance with the established rules and the facts as they may be presented to him at some future date. He continues to have full jurisdiction".

Without further recapitulation of the testimony we believe it shows substantial, credible evidence that Mrs. Derringer indulged in improper behavior with Mr. Hoover, that if he did not spend any all night periods with her he was in the small one-room kitchenette apartment with her and the two and one-half year old boy late at night and before sunup in the morning. These misbehaviors were not even carried out with due privacy. They were apparent to the neighbors and were in the actual presence of the child.

Giving due deference to the conclusions of the trial judge who saw, observed and heard the witnesses, we cannot say that the best interests of the child require that his custody be continued with the mother. There is affirmative testimony, undisputed, that a good home awaits him with his grandparents. No attack was made on the character or behavior of Mr. Derringer. True, he works during the day and someone else must care for the child during the daytime, but when Mrs. Derringer works, a baby sitter must likewise actually care for the boy. Is it likely that a baby sitter will do this better than this grandmother of 41 years will do it?

We believe the evidence reveals a change in conditions since the divorce was granted. We cannot rule the trial court erred in entering its modification order transferring custody. Such judgment finds support in the evidence and appears to be in the best interests of the minor son of the parties at this time.

The judgment is affirmed.

SPERRY, C., concurs.

PER CURIAM.

The foregoing opinion of MAUGHMER, C., is adopted as the opinion of the Court.

All concur.