Donald J. CARR, Plaintiff-Appellant,

v.

Betty CARR, Defendant-Respondent.

No. 9157.

Missouri Court of Appeals,
Springfield District.

May 1, 1972.

**318**

Robert A. Dempster, Joseph P. Fuchs, Dempster, Yokley & Fuchs, Sikeston, for plaintiff-appellant.

L. D. Joslyn, Albert G. Tindall, Joslyn & Joslyn, Charleston, for defendant-respondent.

HOGAN, Judge.

This is an action to modify the child custody provisions of a decree of divorce. The parties, who were divorced in July 1966, are the parents of a son, Gregory, who was nearly eight years of age at trial time. The decree awarded care and custody of the child to the defendant, who has not remarried. Plaintiff married a second time in December 1967, has since become the father of two more children and is, or was, expecting a third. Alleging that the defendant had improperly associated and cohabited with men to whom she was not married in Gregory's presence, and had unreasonably refused him the right to associate with his child, plaintiff brought this action to modify the original decree, praying alternatively that the court award him sole custody of the child or award him "increased temporary custody rights for specified times." After hearing evidence, the trial court refused to award plaintiff the major custody of his son, but entered an order awarding plaintiff (1) custody of the child on alternate weekends from 5:00 P. M. on Friday to 6:00 P.M. on Sunday, (2) custody for four days during Christmas holidays on alternate years beginning in 1971, and custody for two days during the Thanksgiving holidays on alternate years beginning in 1972, and (3) custody during the summer school vacation for two weeks

in July and two weeks in August. Defendant was also allowed an attorney's fee in the amount of $600. The plaintiff appeals, maintaining: (1) that the evidence shows defendant to be unfit to have custody of her child, and (2) that the court erred in allowing defendant an attorney's fee because there was no evidence that she was without means to employ an attorney to defend against the motion.

The controversy concerning the defendant's fitness as custodian of her son, at least in this court, centers around her association with her employer, Ronald Crenshaw. Defendant is employed as secretary and treasurer of H & R Food Distributors; Mr. Crenshaw is the manager. Mr. Crenshaw was married but separated from his wife during the time here involved; at trial time, he had a divorce action pending against him. Defendant began working for H & R and Mr. Crenshaw in July 1968 as an office manager.

Most of the evidence touching the defendant's association with her employer came from the defendant herself, who was called as a witness by the plaintiff. In substance, her testimony was that she left for work about 7:30 in the morning and worked until 4:30 P.M. at H & R. On a number of occasions—defendant "would say three or four, very few"—Mr. Crenshaw had eaten his evening meal at defendant's home. This was usually "[a]long [about] six or six-thirty," and Mr. Crenshaw would leave shortly thereafter, except on one occasion when he fell asleep watching television. On this occasion, defendant and her son went to bed early; defendant awoke about 12:30 P.M. or 1:00 A.M., found Crenshaw asleep on the couch, "shook him and he got up and went home or went somewhere."

The defendant had gone on trips with Mr. Crenshaw, specifically to Springfield and Willow Springs, Missouri. Defendant took her son. She and Crenshaw spent the night in adjoining rooms, and defendant slept with her son. Defendant and Cren-

shaw shared the expense of the trips, but defendant paid for her own room. Mr. Crenshaw purchased meals for the three on these trips. Defendant also spent some time in Mr. Crenshaw's company on Labor Day, 1970, at Kentucky Lake at a vacation resort or motel of some kind known as the Ken-Bar Motel. Defendant knew that Mr. Crenshaw was to be at Kentucky Lake over the holiday, but denied that her meeting with Mr. Crenshaw there was prearranged. Defendant stayed from Friday until Monday; Mr. Crenshaw left on Sunday. Defendant was sure she was in Mr. Crenshaw's room, but denied occupying the same room with Mr. Crenshaw. Gregory was along, and defendant slept with Gregory "all three nights."

There were times when defendant had been out to dinner with Mr. Crenshaw without Gregory. On one occasion, the defendant had driven Mr. Crenshaw to Wickliffe, Kentucky, during business hours, on business. Defendant would sometimes have a drink when Mr. Crenshaw took her out to dinner. Mr. Crenshaw was also called as a witness by the plaintiff and generally corroborated defendant's testimony concerning their association. The child, Gregory, was questioned in chambers, and was asked if he remembered the trip to Kentucky Lake. He did, and stated that he slept in one of the two rooms "with my mama." On the trip to Willow Springs, Gregory said, he and defendant slept in the same room. Both went to bed at the same time. This is not all of the evidence concerning defendant's association with Crenshaw, but it is sufficient to show the nature and tenor of the case with which we are dealing.

As stated, plaintiff argues in this court that the defendant, ". . . by her deplorable conduct . . . has disqualified her[self] to have custody of the little boy." He likens this case to Derringer v. Derringer, Mo.App., 377 S.W.2d 513, Yount v. Yount, Mo.App., 366 S.W.2d 744, and others in which one or another parent has

been found to be an unfit custodian of his child, and argues that Gregory should be placed in his father's custody. We cannot agree.

A party seeking to modify the custody provisions of a divorce decree has the burden of proof, Asbell v. Asbell, Mo.App., 430 S.W.2d 436, 438 [1]; Prudot v. Stevens, Mo.App., 266 S.W.2d 756, 758 [4], and consequently in this case the burden was upon the plaintiff to show that the defendant was unfit to have custody of her son. Plaintiff undertook to discharge that burden here by calling his party opponent as a witness and by undertaking to show defendant's misconduct through her own testimony. It is true that defendant admitted having Mr. Crenshaw into her home for meals and admitted taking two or three trips in his car, but when pressed she specifically denied the commission of any act which could properly be called degrading or immoral. Plaintiff did not have independent proof of immorality or promiscuity on defendant's part, as did the complaining parties in *Derringer* and *Yount*, upon which he particularly relies. The plaintiff, in urging that this court ". . . is not so naive as to believe that this defendant . . . told all," and that "[t]he Court can certainly draw its own conclusions of the relationship that in reality existed . . ." is in fact asking that we disregard his own evidence to the contrary, which in our view was consistent and certainly stood uncontradicted by the evidence of any other witness. Having undertaken to prove the defendant's lack of fitness by her own testimony, and having failed to do so, plaintiff is in no position to ask us to disregard his own evidence. Platt v. Platt, 343 Mo. 745, 749, 123 S.W.2d 54, 55 [4]; Manchester Bank v. Harrington, Mo., 199 S.W. 242, 249 [5]; Rodan v. St. Louis Transit Co., 207 Mo. 392, 408, 105 S.W. 1061, 1066. In our opinion, the plaintiff has failed to sustain his burden of showing the defendant to be an unfit custodian of her child. Even if we assume, as plaintiff urges we

should, that defendant has not "told all," and grant that her testimony indicates a certain lack of discretion on her part, the record certainly does not evoke the picture of squalid, drunken adultery considered by the court in the *Yount* case, nor establish the parental neglect and unstable infatuation with a paramour which disqualified the mother in the *Derringer* case. Although we need not, and shall not, recite all the testimony at length, the evidence does not preponderate in favor of either party, and the trial court was vested with a broad discretion in making an award of custody. Dupree v. Dupree, Mo.App., 357 S.W.2d 241, 242–243 [1]; Ramos v. Ramos, Mo.App., 232 S.W.2d 188, 198–199 [11]. The whole record considered, it could not be said that the atmosphere and surroundings in one home are markedly superior to those existing in the other, nor that either of the parties has so offended good morals as to be an improper custodian of the minor child, nor, contrary to plaintiff's contention, is there any indication that the child will be subject to substantial immoral or debasing influences in the defendant's home. Since we cannot confidently say that some other and different disposition of Gregory's custody would better serve his interest, we affirm the award of custody. See Brand v. Brand, Mo.App., 441 S.W.2d 750, 754–755 [2, 3].

The plaintiff's point made in connection with the attorney's fee allowed the defendant is better taken. The general principles governing the allowance of attorney's fees in cases of this kind have been fully discussed by this court in Graves v. Wooden, Mo.App., 291 S.W.2d 665, 671 [12] [13] [14], and Price v. Price, Mo.App., 281 S.W.2d 307, 313–314 [15–18] [20], and need not be restated at length here. We cannot say as a matter of law that the total allowance was excessive, though in the particular circumstances it seems very generous, for the simple reason that the record as presented is insufficient to warrant making any allowance at all; the evidence presented does not really establish either party's means or ability to pay an attorney. True, the plaintiff testified that he earned "six hundred a month" and that his "take home pay right now" was "$478.00 and a few cents." He was, however, in the process of buying a house and was obliged to support a family of five, assuming the child his wife was expecting has now been born, and to contribute to Gregory's support as well. Defendant's take home pay is $90.00 per week, but she is also repaying a salary advance made by H & R to enable her to purchase a home for herself and her child. As stated in Graves v. Wooden, supra, 291 S.W.2d at 671, the propriety of making an allowance to the former wife depends on whether the wife is independently possessed of sufficient means, to which she may reasonably be required to resort, and with which she may adequately prosecute or defend the pending action, as the case may be. Further, as that case and others note, if an allowance is to be made, the husband's ability to pay in light of his reasonable and necessary obligations is a factor to be considered in fixing the amount to be allowed. See Berbiglia v. Berbiglia, Mo.App., 442 S.W.2d 949, 952 [6]; Graves v. Wooden, supra, 291 S.W.2d at 671; Schwent v. Schwent, Mo.App., 209 S.W.2d 546, 548 [5–7]; Anno., 56 A.L.R.2d 13, 41–42, § 10 (1957). The case is therefore reversed as to the allowance of attorney's fees, and remanded with directions to determine the necessity for an allowance in light of the parties' respective means, and the amount thereof in light of the defendant's necessities and the plaintiff's ability to pay, should an allowance seem necessary.

TITUS, C. J., and STONE, J., concur.