### RAILROAD COMPANY v. COMMISSIONERS.

1. Where a railroad company is, for the purpose of constructing and repairing its road, invested with the powers and privileges and subjected to the obligations contained in certain enumerated sections of the charter of another company which was exempt from taxation, — *Held;* that the grant does not include immunity from taxation.
2. *Railroad Companies* v. *Gaines* (97 U. S. 697) and *Morgan* v. *Louisiana* (93 id. 217) reaffirmed and applied to this case.

ERROR to the Court of Appeals of the State of Maryland.

The facts are stated in the opinion of the court.

*Mr. William H. Tuck* and *Mr. Montgomery Blair* for the plaintiff in error.

*Mr. Henry Aisquith* and *Mr. Charles J. M. Gwinn*, Attorney-General of Maryland, *contra.*

MR. CHIEF JUSTICE WAITE delivered the opinion of the court.

The Annapolis and Elk Ridge Railroad Company was incorporated by an act of assembly of Maryland, passed March 21, 1837. Sect. 5 of its charter is as follows: —

"And be it enacted, that the president and directors of the said company shall be, and they are hereby, invested with all the rights and powers necessary to the construction and repair of a

railroad from the city of Annapolis, to connect with the Baltimore and Washington railroad, not exceeding sixty feet in width, with as many sets of tracks as the said president and directors, or a majority of them, may think necessary; and for this purpose the said president and directors may have and use all the powers and privileges, and shall be subject to the same obligations, that are provided in the fourteenth, fifteenth, sixteenth, seventeenth, eighteenth, nineteenth, twentieth, twenty-first, twenty-second, and twenty-third sections of the aforesaid act, entitled 'An Act to incorporate the Baltimore and Ohio Railroad Company.' "

The capital stock of the company was fixed at $450,000, the State taking $300,000, on which a payment of at least six per cent per annum was to be guaranteed by the company. None of the sections of the charter of the Baltimore and Ohio Company referred to, except the eighteenth, have any special bearing on the present case. They related entirely to the powers and privileges necessary to the construction, operation, and maintenance of the road. Sect. 18, on which the case depends, is as follows : —

" And be it enacted, that the said president and directors, or a majority of them, shall have power to purchase with the funds of said company, and place on any railroad constructed by them under this act, all machines, wagons, vehicles, or carriages of any description whatsoever, which they may deem necessary or proper for the purposes of transportation on said road, and they shall have power to charge for tolls upon (and the transportation of persons) goods, produce, merchandise, or property of any kind whatsoever, transported by them along said railway from the city of Baltimore to the Ohio River, any sum not exceeding the following rates, viz. : On all goods, produce, merchandise, or property of any description whatsoever, transported by them from west to east, not exceeding one cent a ton per mile for toll, and three cents a ton per mile for transportation ; on all goods, produce, merchandise, or property of any description whatsoever, transported by them from east to west, not exceeding three cents a ton per mile for tolls, and three cents a ton per mile for transportation, and for the transportation of passengers not exceeding three cents per mile for each passenger ; and it shall not be lawful for any other company, or any person or persons whatsoever, to travel upon or use any of the roads of said company, or to transport persons, merchandise, produce, or property

of any description whatsoever, along said roads, or any of them, without the license or permission of the president and directors of said company; and that the said road or roads, with all their works, improvements, and profits, and all the machinery of transportation used on said road, are hereby vested in the said company, incorporated by this act, and their successors, forever; and the shares of the capital stock of the said company shall be deemed and considered personal estate, and shall be exempt from the imposition of any tax or burthen by the States assenting to this law."

Under the last clause of this section it was held at an early day, by the Court of Appeals of Maryland, that the property of the Baltimore and Ohio Company was exempt from taxation. *Mayor, &c. of Baltimore* v. *Baltimore & Ohio Railroad Co.*, 6 Gill (Md.), 288; *State* v. *Baltimore & Ohio Railroad Co.*, 48 Md. 49. In 1876, the General Assembly passed an act to provide for the assessment and taxation of railroad companies, and under that act the commissioners of Anne Arundel County proceeded to assess the property of the Annapolis and Elk Ridge Company. The object of the proceeding instituted in the court below was to vacate this assessment, on the ground that the property of the company was by its charter exempt from taxation. The Court of Appeals refused the relief asked, holding that no such exemption existed. To reverse that judgment the case has been brought here by writ of error.

We think the judgment below was right. Grants of immunity from taxation are never to be presumed. On the contrary, all presumptions are the other way, and, unless an exemption is clearly established, all property must bear its just share of the burdens of taxation. These principles are elementary, and should never be lost sight of in cases of this kind.

The Annapolis and Elk Ridge Company was " invested with all the rights and powers necessary to the construction and repair " of its railroad, and for that purpose was to " have and use all the powers and privileges," and be subject to the obligations, contained in the enumerated sections of the Baltimore and Ohio charter. Clearly this is not a grant of all the powers and privileges of the Baltimore and Ohio Company named in those sections, but only of such as were necessary to carry into effect the objects for which the new company was

incorporated. Such is the plain import of the language employed. Consequently, only such of the privileges of the old company could be enjoyed by the new as were appropriate to the work which the latter was authorized to do.

The power to construct and repair a railroad undoubtedly implies, in the absence of any restrictions, the power to use the road when constructed as railroads are ordinarily used. Such use is in general an incident to the ownership of that kind of property. The powers and privileges of the Baltimore and Ohio Company, therefore, which the new company was permitted to " have and use," were such as were necessary to the construction, repair, and use of its railroad. Exemption from taxation is not one of these privileges. It is undoubtedly a privilege, but not necessary either to the construction, repair, or operation of a railroad. We so held in the case of Knoxville and Charleston Railroad Company (*Railroad Companies* v. *Gaines*, 97 U. S. 697), where the language of the charter was much like this. Our conclusion then was that the grant to one company of the rights and privileges of another, for the purpose of making and using a railroad, carried with it only such rights and privileges as were essential to the operations of the company, or, to use the language of Mr. Justice Field for the court in *Morgan* v. *Louisiana* (93 id. 217), the positive rights and privileges without which the road of the company could not be successfully worked.

It seems to us that case is conclusive of this. We cannot see that the claim of the company is at all strengthened by the fact that the State was to be the largest stockholder, and to some extent preferred in the division of profits. The corporation was not in that way made a part of the government. It had certain duties to the public to perform ; but it was, notwithstanding the State's interest in its stock, just as much a private corporation as any other railroad company is. There are no more presumptions in its favor than any other railroad company with the same general powers and privileges can claim. The public ownership of the stock gave the company no more rights against the State than a private ownership would. The State was not, in any respect, " her own grantee." She granted a charter, and those who claim under her charter,

whether it be herself or some one else, must be content with what she granted in that way. Ordinarily the same rules of construction which are applied to other charters will be applied to such as this. The State, as a stockholder, must take what she, as sovereign, gave to the other stockholders, unless she, in express terms, provided specially for herself. She did in this case make provision for a 'preferred dividend, but did not on that account, or any other, relieve the property of the company from the burdens of taxation, such as were common to all property holders in the State. She did give the Baltimore and Ohio Company such an exemption, but that privilege was kept back from this corporation.

We are all clearly of the opinion that the power to tax the property of the company was never relinquished by the State, either in express terms or by any fair implication.

*Judgment affirmed.*