PLUNKETT-JARRELL GROCER COMPANY *v.* HUIE.

Opinion delivered January 23, 1928.

1. APPEAL AND ERROR—HARMLESS ERROR.—Where a plaintiff brought suit and caused attachment to be levied upon defendant's property, but shortly thereafter the defendant was adjudicated a bankrupt, and, upon the intervention of the trustee in bankruptcy, the attachment was dissolved, the court's failure to give plaintiff a judgment against the defendant, if error, was harmless, since the plaintiff could submit his open account to the trustee in bankruptcy as well as the judgment could have been submitted.

2. BANKRUPTCY—BURDEN OF PROOF.—A trustee in bankruptcy, seeking to set aside an attachment obtained against the bankrupt before his adjudication as such, has the burden of proving that the debtor was insolvent when the attachment was obtained.

3. BANKRUPTCY—QUESTION OF FACT.—In a proceeding by the trustee of a bankrupt to set aside an attachment levied upon property of the bankrupt shortly before the bankruptcy adjudication, on the ground that the bankrupt was insolvent when the attachment was secured, *held* that insolvency was a question of fact for the jury, or for the court sitting as a jury where a jury was waived.

4. APPEAL AND ERROR—CONCLUSIVENESS OF VERDICT.—A verdict of the jury or findings of the trial court sitting as a jury will not be set aside for insufficiency of evidence, if there is any substantial evidence to support the verdict or findings.

5. APPEAL AND ERROR—CONCLUSIVENESS OF VERDICT.—In testing the sufficiency of evidence to sustain a verdict, the highest probative value of which it is susceptible, together with all inferences reasonably deducible therefrom will be given.

6. BANKRUPTCY—EVIDENCE OF INSOLVENCY.—In a proceeding by a trustee of a bankrupt estate to set aside an attachment levied against the bankrupt before his adjudication as such, the fact that the attachment was obtained two months before the bankruptcy adjudication, is a circumstance tending to prove insolvency at the time of the attachment.

7.   BANKRUPTCY—EVIDENCE OF INSOLVENCY.—In a prosecution by the
     trustee of a bankrupt to set aside an attachment obtained on
     the bankrupt property before adjudication, on the ground that the
     attachment was obtained while the defendant was insolvent, evi-
     dence *held* sufficient to support a finding of insolvency at such
     time.

Appeal from Conway Circuit Court; *J. T. Bullock,*
Judge; affirmed.

*Moore, Gray & Burrow* and *Frank E. Chowning,*
for appellant.

*Strait & Strait,* for appellee.

McHANEY, J.   On December 23, 1926, appellant insti-
tuted an action against R. B. McCracken in the Conway
Circuit Court for $984.16 on open account, and caused a
writ of attachment to be levied upon his stock of mer-
chandise and fixtures in Morrilton, Arkansas.   There-
after, on January 3, 1927, other of McCracken's creditors
filed an involuntary petition in bankruptcy against him,
and appellee was appointed receiver of said estate.   As
receiver, appellee intervened in the action of appellant
against McCracken, and filed a motion to quash the
attachment and have the property attached turned over
to the jurisdiction of the district court and the intervener
as receiver, on the ground that McCracken was insolvent
at the time of the levy of the attachment, and that the
Federal court had acquired jurisdiction thereof by vir-
tue of the petition in bankruptcy.   Appellant filed a
response to this motion, and, upon a hearing, the court
found that an involuntary petition in bankruptcy was
pending against McCracken, upon which there had been
no adjudication, and directed that the attached property
be held *in statu quo* pending adjudication on said peti-
tion, and directed that the receiver be permitted access
to the property for the purpose of taking an inventory.
On February 28, 1927, McCracken was adjudicated a
bankrupt by the Federal District Court, and appellee
was elected trustee of said estate, and, as such trustee,
he thereupon filed a motion and intervention in the Con-
way Circuit Court in the case of appellant against

McCracken, alleging said facts, and praying that the attachment be quashed, and that he be delivered the possession of said property as trustee in bankruptcy. Appellant filed a response to this motion, and, after a hearing, the court rendered judgment, finding that McCracken was insolvent at and prior to the time plaintiff's attachment was levied, ordered the attachment dissolved, and authorized appellee, as trustee in bankruptcy, to take charge of the attached property. The court further held that appellant was not entitled to a judgment against McCracken for the amount of his debt, and from the judgment against it appellant has appealed to this court.

It is first insisted that appellant was entitled to a default judgment against McCracken, since he was served with a summons, and made no appearance at the trial, either in person or by attorney. We do not see how a personal judgment against McCracken would or could have put appellant in any better shape to prove his claim in the bankruptcy court. If appellant had a personal judgment against McCracken, since McCracken has been adjudicated a bankrupt and his affairs taken over to be administered by the court of bankruptcy, appellant would have been required to file its judgment as a claim against the bankrupt to have participated in the distribution of his assets. It could have done the same with its open account, and we conclude that appellant was not prejudiced by the failure of the circuit court to give it a personal judgment against him.

Appellant concedes that the real issue in the case is, whether the circuit court erred in quashing the attachment, and says that "the lien of appellant's attachment must be sustained unless the intervener, by a fair preponderance of the evidence, has shown that R. B. McCracken was insolvent at the time the appellant's attachment was levied." If McCracken was insolvent at the time of the levying of the attachment, we understand the appellant to concede that the action of the court in quashing the attachment was correct. The burden of

proof was on the intervener to prove McCracken's insolvency at the time the attachment was levied. *Lester* v. *Thomas,* 174 Ark. 351, 295 S. W. 717. And this was a question for the jury, under proper instructions from the court, but a jury was waived in this case, and the matter submitted to the court sitting as a jury. Therefore, under the settled rules of this court, if there is any substantial evidence tending to establish the insolvency of the bankrupt, McCracken, then this court will not set aside the verdict of the jury or the findings of the court sitting as a jury on account of the insufficiency of the evidence. It is the settled rule of this court that it will not do so, even though this court may be of the opinion that the preponderance of the evidence is against the finding of the jury or the court. In the case of *Karr* v. *Bowen,* 128 Ark. 307, 194 S. W. 498, we held that, in testing the sufficiency of the evidence to sustain the verdict, the highest probative value of which it is susceptible will be given to that end, together with all inferences reasonably deducible therefrom, and the verdict will not be set aside because the preponderance thereof is against it.

The findings of the court, sitting as a jury, have the same binding effect on this court as the verdict of a jury. Appellant concedes this rule, but says there is no competent substantial evidence to support the findings and judgment of the circuit court.

It is conceded that McCracken's indebtedness at the time of the attachment, exclusive of his mortgage indebtedness, was $4,087.15, and, including his mortgage indebtedness of $2,790, his total debts amounted to $6,877.15. We think there is substantial evidence showing McCracken's insolvency, outside of the evidence claimed by appellant to be incompetent. McCracken repeatedly admitted his insolvency and incapacity to pay his debts. He told Ed Gordon, his attorney, that he was insolvent and unable to meet his obligations, and would go into voluntary bankruptcy, but was unable to pay the advance costs. McCracken also signed a written admission of

insolvency, which was introduced and identified by Mr. Woodward, and he also admitted his insolvency to other witnesses. Appellant contends that these admissions of insolvency were incompetent in a suit between appellant and the trustee. Conceding, but not deciding, that this evidence is incompetent, still Mr. Gordon testified that McCracken's total assets were slightly in excess of $3,000, exclusive of his equity in real estate and the small amount of collateral notes in the First National Bank. The face value of these collateral notes was only $225, but Mr. Tom Davis, vice president of the bank, testified that they were practically worthless. McCracken had been owing the bank for a long time, and, although the bank was demanding payment of him during this time, had been unable to collect, and had to renew his paper. Other witnesses testified to his inability to pay his current debts, or their inability to collect them, and his frequent admission of his inability to pay. Appellee made an inventory and appraisement of the bankrupt's assets shortly after the attachment suit was filed, and found he had only $3,086.02, according to the invoice and appraisement, and that the inventory was made on a basis of the original value of the goods, without depreciation, but that depreciation was figured on the fixtures. He was adjudged a bankrupt a little more than two months after the levying of the attachment, and this is a very strong circumstance of his insolvency at the time of the attachment.

We think the evidence amply sufficient to support a finding of insolvency at the time the attachment was levied, and the judgment is accordingly affirmed.