Bert E. **STRUBINGER**, (Plaintiff) Appellant,

v.

**MID–UNION INDEMNITY COMPANY**, an Illinois Corporation, and Mid-Union Indemnity Company, an Illinois Corporation, in Conservatorship, and T. Donald Karnes, Special Deputy Bureau of Liquidations, Conservations and Rehabilitations, Department of Insurance, State of Illinois, Defendants,

and

Aetna Casualty & Surety Company, a Corporation, (Garnishee) Respondent.

No. 30807.

St. Louis Court of Appeals, Missouri.

Dec. 19, 1961.

Norman L. Schmoll, Strubinger, Tudor, Tombrink & Wion, St. Louis, for appellant.

J. C. Jaeckel, Moser, Marsalek, Carpenter, Cleary, Jaeckel & Hamilton, St. Louis, for garnishee-respondent.

RUDDY, Judge.

This is an appeal from an order and judgment of the Circuit Court of the City of St. Louis sustaining a motion to quash a writ of attachment and garnishment in aid thereof and the purported service of said writ of attachment and garnishment, for discharge of the garnishee and for other relief.

This case had its beginning when Bert E. Strubinger, an attorney at law, filed suit against Mid-Union Indemnity Company, an Illinois corporation, Mid-Union Indemnity Company, an Illinois corporation in conservatorship and T. Donald Karnes, Special Deputy Bureau of Liquidations, Conservations and Rehabilitations, Department of Insurance, State of Illinois.

Plaintiff's petition was in two counts. In Count I of said petition plaintiff alleged that he is a resident of the State of Missouri and a duly licensed attorney at law in said state. He further alleged that defendant, Mid-Union Indemnity Company, is an Illinois corporation, and that defendant, T. Donald Karnes, is Special Deputy of the Bureau of Liquidations, Conservations and Rehabilitations of the Insurance Depart-

ment of the State of Illinois, a legal entity of that state.

It was further alleged in said petition that plaintiff handled a legal matter in the usual course of business between himself and defendants wherein a subrogation claim of the defendants was agreed to be settled for the sum of $5000 with Aetna Casualty and Surety Company, a foreign insurance company authorized to do business in the State of Missouri, with an office in the City of St. Louis, Missouri, and that release papers for that sum were received by plaintiff from the Aetna Casualty and Surety Company and submitted to the defendants for their signatures and the signature of their assured.

It was further alleged by plaintiff in said petition that said release had been signed by defendants and their insured and that Aetna Casualty and Surety Company has contacted plaintiff's office indicating that defendants refused to recognize the attorney's lien of plaintiff for plaintiff's fee for services in effecting the settlement agreement. Plaintiff then alleges in said petition that Mid-Union Indemnity Company and its Conservator have delivered the release to the Aetna Casualty and Surety Company at its St. Louis office and that the sum of $5000 is due and owing to defendants, subject to the lien of plaintiff for his legal fees. Plaintiff prays judgment in Count I of said petition in the sum of $1250 against all defendants.

In Count II of his petition plaintiff adopts pertinent and necessary allegations of Count I of said petition and further alleges in Count II that the defendant Mid-Union Indemnity Company has contracted for services with plaintiff on various items of business and that the sum of $6029.98 is due and owing plaintiff for such services. Attached to said petition was an affidavit signed by the plaintiff wherein it was stated that the defendants are non-residents of the State of Missouri.

A writ of attachment and summons and garnishment in aid of attachment for the Aetna Casualty and Surety Company was issued followed by an alias writ of attachment and summons and garnishment in aid of attachment directed to the Sheriff of Cole County, Missouri, to be served upon the Superintendent of Insurance, Jefferson City, Missouri, as agent for the Aetna Casualty and Surety Company. The Sheriff of Cole County made a return of service of the attachment and summons and garnishment in aid thereof. In said return of service it was stated that said Sheriff of Cole County seized and attached in the hands of Aetna Casualty and Surety Company, Garnishee, "all debts due or to become due by you to Mid-Union Indemnity Company, an Illinois corporation, Mid-Union Indemnity Company, an Illinois corporation, in Conservations, and T. Donald Karnes, Special Deputy Bureau of Liquidations, Conservations and Rehabilitations, Department of Insurance, State of Illinois, the defendants in the above entitled cause, or so much thereof as will be sufficient to satisfy the sum of Seven Thousand Two Hundred and Seventy-nine and 98/100 ($7279.98)—Dollars with interest and costs of suit."

Thereafter, a "Motion of Garnishee To Quash Attachment and Purported Writ of Garnishment and Purported Service Thereof and to Discharge Garnishee" was filed by the Aetna Casualty and Surety Company. The pertinent ground of said motion is as follows:

"3. That Bert E. Strubinger, plaintiff, cannot maintain the action instituted by him against Mid-Union Indemnity Company, an Illinois Corporation, Mid-Union Indemnity Company, an Illinois Corporation, in Conservatorship, and T. Donald Karnes, Special Deputy Bureau of Liquidations, Conservations and Rehabilitations, Department of Insurance, State of Illinois, as defendants, and in connection wherewith this purported garnishment proceeding was initiated for the purpose of attempting to obtain service upon said defendants, for the reason that, in the case of 'People of the State of

Illinois, ex rel, Joseph S. Gerber, Director of the Department of Insurance of the State of Illinois, Petitioner vs. Mid-Union Indemnity Company, a corporation, Defendant, No. 59–1051,' the Circuit Court of Kane County, Illinois, did, on August 31, 1959, and prior to the commencement of said suit of Bert E. Strubinger v. Mid-Union Indemnity Company et al, enter an order in said cause No. 59–1051, providing for the rehabilitation of said Mid-Union Indemnity Company and directing said Joseph S. Gerber to take immediate possession of the property, business and affairs of said Mid-Union Indemnity Company and to rehabilitate said Company in accordance with the provision of the Insurance Code of the State of Illinois; and said Circuit Court did further order that said Mid-Union Indemnity Company, its officers, agents, directors, representatives, attorneys, employees and servants were thereby restrained and enjoined from transacting any company business until the further order of said Court.

"And, said Circuit Court further ordered that all creditors and other persons having claims against said Mid-Union Indemnity Company be and they were thereby enjoined and restrained from instituting any suit or proceeding intended for the purpose of obtaining a judgment against said Mid-Union Indemnity Company, from having any execution issue against said Company upon any judgment theretofore entered against it, and said creditors and claimants and all other persons were thereby restrained and enjoined from taking any action which would interfere with the rehabilitation of said Company, or with the relator's possession and control or title, rights or interests in or to the business or the property of Mid-Union Indemnity Company and from, in any manner, interfering with the conduct of said business by the relator; and that all per-sons were thereby restrained and enjoined from obtaining or attempting to obtain preferences, judgments, attachments or other like liens, and from making any levy against said Company or its property and assets while the same are in possession and control of relator or until the further order of the Circuit Court.

"And garnishee avers that said order of said Circuit Court was in full force and effect at the time of the commencement of said suit by said Bert E. Strubinger and still is in full force and effect.

"An authenticated copy of said order of said Circuit Court of Kane County, Illinois, is attached hereto and made part hereof by reference."

The relief sought by the movant was quashing of the writs and the service thereof, a finding that the court had not acquired jurisdiction of the movant and that plaintiff could not maintain the proceeding against the defendants and said garnishee. As stated in said motion, a duly authenticated copy, according to the Act of Congress governing such matters, was filed, which authentication consists of certification that the Circuit Court of Kane County, Illinois, is a court of record and has a Judge presiding, a Clerk attending upon the same as well as a Seal of Court. (Western Assurance Co. v. Walden, 238 Mo. 49, 141 S.W. 595.)

The Judgment and Order of Rehabilitation is as follows:

"This cause coming regularly on for hearing upon the complaint of the plaintiff and on appearance and answer of the defendant, and the parties hereto appearing in open Court by their respective attorneys, and this Court having considered the evidence and arguments of counsel and being fully advised in the premises, doth find:

"1. That it has jurisdiction of the subject matter of this suit and the parties thereto.

"2. That the Mid-Union Indemnity Company, a corporation, defendant herein, is a stock casualty insurance company organized and existing under and by virtue of the insurance laws of the State of Illinois; that said company was originally incorporated on August 28, 1956, and has its principal office in the City of Elgin, County of Kane and State of Illinois.

"3. That the defendant company was organized and subject to the laws of the State of Illinois relating to insurance, including the Act commonly referred to as the Illinois Insurance Code (Chapter 73, paragraph 603 [613]–1065.59, Illinois Revised Statutes, 1957).

"4. That the defendant company has been authorized to transact the kinds of business enumerated in Class II of Section 4 of the Illinois Insurance Code by virtue of a certificate of authority from the Director of Insurance issued on August 28, 1956.

"5. That an investigation was commenced by the Department of Insurance into the books, records and documents of the defendant company, as of Dec. 31, 1958, for the purpose of ascertaining the financial condition and affairs of said defendant company, in accordance with the provisions of the statute in such case made and provided for, but that said Department was unable to complete their examination, due to the failure of said defendant company to maintain its books and records according to the usual and customary insurance accounting practices, its failure to complete posting all entries in said books and records and its failure to maintain proper claim files and registers; that altho said investigation was not completed due to the condition of said books, records and affairs as aforesaid, and notwithstanding said condition, the Department of Insurance found in their examination,

insofar as such examination was capable of being completed, that the defendant company was insolvent and that its total assets were insufficient to satisfy its total liabilities.

"6. That an independent audit of the financial condition of the defendant company was caused to be made by the Mid-Union Indemnity Company, a corporation, defendant herein, but that said audit was not certified because of the aforesaid condition of the books and records of defendant company; that said audit indicates that said company is insolvent in that its total assets are insufficient to satisfy its total liabilities; that the audit shows the assets of the Mid-Union Indemnity Company, a corporation, to be $3,332,555.92 and its liabilities to be $4,518,635.78, leaving a deficit of $1,186,079.86.

"7. That said insolvent condition has not been corrected or eliminated and still exists to the date of this complaint.

"8. That from a careful examination and consideration of the condition of the defendant corporation, relator is of the opinion that there is a reasonable probability that by proper management the defendant corporation may be rehabilitated in accordance with the authority granted by Article XIII of the Insurance Code of the State of Illinois.

"9. That from an examination of the verified complaint and answer thereto and from the evidence adduced in open Court, an order should be immediately entered herein finding that sufficient cause exists for the rehabilitation of said defendant corporation.

"Wherefore, It Is Ordered that sufficient cause exists for the rehabilitation of the Mid-Union Indemnity Company, a corporation, defendant herein, and that the relator, Joseph S. Gerber, Director of the Department of Insurance of the State of Illinois, take immediate possession of the property, business and

affairs of the Mid-Union Indemnity Company, a corporation, and rehabilitate the same in accordance with the provision of the Insurance Code of the State of Illinois.

"It Is Further Ordered that the Mid-Union Indemnity Company, a corporation, its officers, agents, directors, representatives, attorneys, employees and servants are hereby restrained and enjoined from transacting any company business until the further order of this Court.

"It Is Further Ordered that all creditors and other persons having claims against said Mid-Union Indemnity Company, a corporation, be and they are hereby enjoined and restrained from instituting any suit or proceeding intended for the purpose of obtaining a judgment against the defendant corporation; from having any execution issue against said defendant corporation upon any judgment heretofore entered against it, and said creditors and claimants and all other persons are hereby restrained and enjoined from taking any action which would interfere with the rehabilitation of said Mid-Union Indemnity Company, a corporation, or with the relator's possession and control or title, rights or interests in or to the business or the property of the defendant corporation and from, in any manner, interfering with the conduct of said business by relator; and all persons are hereby restrained and enjoined from obtaining or attempting to obtain preferences, judgments, attachments or other like liens, and from making any levy against the defendant corporation or its property and assets while the same are in possession and control of relator or until the further order of this Court."

Subsequently, said motion of Garnishee was heard by the Court and was sustained.

For the sake of brevity we shall refer to Aetna Casualty and Surety Company, a corporation, as Garnishee; Mid-Union Indemnity Company, an Illinois Corporation, as a separate entity and in Conservatorship, as Mid-Union; T. Donald Karnes, Special Deputy Bureau of Liquidations, Conservations and Rehabilitations Department of Insurance, State of Illinois, as Liquidator.

At the inception of our consideration of this appeal, we are faced with a Motion to Dismiss the Appeal, the grounds of which are: (1) That the order appealed from was a non-appealable order, citing Section 512.020 RSMo 1959, V.A.M.S., and Scheele v. Long, Mo.App., 244 S.W.2d 395. (2) That purported extensions of time granted in which to file the transcript on appeal were not made until after the expiration of previous extensions granted and that the record fails to show that the the orders granting the extensions were made upon motion and notice and a showing of excusable neglect. (V.A.M.R. Civil Rule 44.01(b)(2)).

Attending to the first ground asserted that the order appealed from was a non-appealable order, it seems to be the position of the Garnishee, although not specifically stated, that the appeal is premature because the order appealed from was not a final judgment disposing of all parties and all issues. We assume this to be the Garnishee's position because it cites the case of Scheele v. Long, supra, without any further statement, in support of its ground that the order appealed from was a non-appealable order.

In the case of Scheele v. Long, supra, plaintiff brought an action against Long, Getz, Becker and Mitchell for $2500 which represented an unpaid balance due on a loan by said defendants to plaintiff. Plaintiff also joined the Park-Davis Truck Lines, Inc., as a defendant and applied for and had issued an attachment and summons of garnishment in aid of the attachment against defendant Park-Davis Truck Lines, Inc. Thereafter, Park-Davis Truck Lines, Inc., filed its motion to quash the attachment. This motion was sustained by the

trial court, whereupon plaintiff took an appeal to this court from the trial court's order sustaining said defendant's motion to quash. We held that the appeal was premature, pointing out that the order quashing the attachment did not dispose of the entire case and that there was no final judgment disposing of all parties and all issues. There remained in the main case four individual defendants who had been served with summons and against whom plaintiff had a claim for $2500, the remainder due on the loan. We said that an appeal will not lie from such an order because it is not a final judgment and that there can be no appeal. In addition, we did say in that case, that there is no statute permitting an appeal from an order quashing or dissolving an attachment, citing the provisions of Section 521.480 and Section 521.490 RS Mo 1949, V.A.M.S. Section 521.410 RSMo 1949, provided that a defendant may file a plea in the nature of a plea in abatement which was designed to put in issue the truth of the facts alleged in the affidavit on which the attachment was sued out. The following section 521.420, among other things, determined when and under what circumstances an appeal may be taken from a ruling on the plea in abatement. However, pleas in abatement have been abolished and in 1955 the Legislature substituted a new section 521.410 and instead of permitting a plea in abatement, it authorized the filing of a motion to dissolve the attachment. However, like its predecessor, the only function of the motion to dissolve, authorized by the new section, was to put in issue the truth of the facts alleged in the affidavit on which the attachment was sued out. At the same time the 1955 Legislature substituted the new section 521.420 and it " * * * contemplate[s] a verified motion to dissolve an attachment (in lieu of a plea in abatement), a trial of the issues thereon, and an order sustaining or overruling the motion; and thereafter, a trial on the merits and a final judgment in which there shall be incorporated a finding and judgment sustaining or dissolving the at-

tachment; it is further provided that either party 'may appeal from the judgment * * *.'" National Surety Corporation v. Fisher, Mo., 317 S.W.2d 334, 1. c. 339.

It has been held in a long line of cases (some of which we cite below) that neither party may appeal from the court's ruling on a motion to dissolve (since 1955) or the plea in abatement (prior to 1955) until a determination of the case upon the merits. Jones v. Evans, 80 Mo. 565; Bank of Ava by Cantley v. Northrup, Mo.App., 86 S.W.2d 619; Fields v. Henderson's Estate, 222 Mo. App. 1051, 6 S.W.2d 68; Pisculic v. Pletka, 221 Mo.App. 250, 2 S.W.2d 187; Case v. Smith, 215 Mo.App. 621, 1. c. 626, 257 S.W. 148; Wirt v. Dinan, 41 Mo.App. 236. Under the substituted statute passed by the Legislature in 1955, after a determination of the case on the merits, the court shall incorporate in its judgment on the merits a finding and judgment either that the attachment is dissolved or that the attachment is sustained, the finding to be in accordance with the action of the court theretofore taken on the motion to dissolve the attachment.

We have examined the cases cited and many others and find that in most instances either the defendant was served with a summons or filed a responsive pleading to plaintiff's petition giving the court jurisdiction to hear the case on the merits. For instance, in the case of Pisculic v. Pletka, supra, plaintiff had a writ of attachment and summons issued. Defendant filed a plea in abatement challenging the facts in the affidavit for attachment. Defendant also filed a verified answer to plaintiff's petition. Defendant withdrew her plea in abatement and filed a motion to dissolve the attachment. This motion was sustained. Thereafter, plaintiff filed his term bill of exceptions. The case then proceeded to trial on the merits, terminating in a judgment for plaintiff. Plaintiff then took his appeal from the court's action sustaining defendant's motion to dissolve the attachment. This court said (2 S.W.2d 1. c. 188), "he (plaintiff) waited until the case was heard

on the merits, as he had to, and then took his appeal." In that case the court had jurisdiction over the person of defendant and, therefore, the ruling on the attachment was not a final disposition of the case.

Likewise, in Fields v. Henderson's Estate, supra, summons and a writ of attachment were duly served on defendant. *Defendant filed an answer and counterclaim* to the merits. Judgment was in favor of plaintiff on the merits. Plaintiff appealed from the court's judgment sustaining defendant's plea in abatement to the attachment. The court had jurisdiction over the person of the defendant.

In Bank of Ava by Cantley v. Northrup, supra, *the defendants were before the court* and the attachment and garnishment were issued against third parties on the ground that the property seized belonged to defendants. The case was reversed for hearing on the merits because a default judgment against defendants was improperly rendered.

■ However, we think the case of Scheele v. Long, supra, and the cases relied on therein and other cases with similar holdings, are not controlling in the instant appeal. We think the motion filed by the Garnishee should be treated as a motion authorized under the provisions of Section 509.290 RSMo 1959, V.A.M.S., and V.A.M.R. Civil Rule 55.31. Garnishee's motion filed in the trial court, does not put in issue the truth of the facts alleged in the affidavit on which the attachment was sued out. In fact, it concedes the fact alleged in plaintiff's affidavit, viz., "that defendants are not residents of the State of Missouri." Therefore, Garnishee's motion cannot and should not be treated as a motion authorized and contemplated under the provisions of sections 521.410 and 521.420 RSMo 1959, V.A.M.S.

■ Garnishee's motion is one directed to the merits of plaintiff's cause of action against Mid-Union and the Liquidator. It will be noted that Garnishee alleges in its motion that plaintiff cannot maintain the action against said defendants and in support of its contention filed and made a part of its motion a duly authenticated copy of a Judgment and Order of Rehabilitation entered by the Circuit Court of Kane County, Illinois. Pursuant to section 509.290 and Civil Rule 55.31, supra, Garnishee was permitted to allege matters not appearing from the pleadings and other papers filed in the cause. This it did when it pleaded the Illinois judgment without any controverted or opposing affidavit by plaintiff. The effect of plaintiff's motion when considered with the Judgment and Order of Rehabilitation of the Illinois court was to charge that the court did not have jurisdiction over said defendants and, therefore, over said Garnishee, and that plaintiff's cause of action should be dismissed.

In addition, Garnishee properly asked in its motion that the attachment and garnishment be quashed and that it be discharged as Garnishee. The attachment and garnishment was its primary concern but, as Garnishee states in its brief, it was obliged and duty bound to question the jurisdiction of the lower court and to raise such defenses as the defendants could raise, if present. State ex rel. Adkins et al. v. Grugett, 228 Mo.App. 8, 63 S.W.2d 413.

When the trial court sustained Garnishee's motion, it had the effect of adjudging that plaintiff had no cause of action against defendants Mid-Union and Liquidator, and thus its ruling, terminating the proceeding, was a final determination of plaintiff's cause of action from which determination an appeal will lie.

■ The second ground given by Garnishee in support of its Motion to Dismiss the Appeal is that two of the extensions of time granted to plaintiff in which to file the transcript on appeal were made after the expiration of the previous extensions and that the record fails to show that the orders extending the time for filing the transcript were made upon motion

and notice and a showing of excusable, neglect (V.A.M.R. Civil Rule 44.01(b) (2)). We find it unnecessary to state the details shown by the record concerning these extensions which form the basis of Garnishee's complaint because we think this ground in Garnishee's Motion to Dismiss the Appeal should be overruled for several reasons. The transcript in this case is short, consisting principally of plaintiff's petition, the Motion of Garnishee to Quash the Writ of Attachment and Garnishment, the Court's Order and Judgment and the Returns of Service. The failure to file the transcript and to give notice of the motions for the short extensions of time within which to file the transcript could not have burdened or injured Garnishee. Bray v. St. Louis-San Francisco Ry. Co., Mo.App., 236 S.W.2d 758, and Bohannon et al. v. Camden Bend Drainage Dist., 240 Mo.App. 492, 208 S.W.2d 794. In addition, the appeal has been fully briefed and submitted by the parties to this appeal. Garnishee's Motion to Dismiss the Appeal on the ground we are now discussing was not filed in this court until after plaintiff (appellant) served and filed his brief, viz., when Garnishee (respondent) filed its brief. Prudot v. Stevens, Mo.App., 266 S.W.2d 756; Morris Plan Co. of Kansas v. Jenkins, Mo.App., 216 S.W.2d 160. The Rules of Civil Procedure (41.03) and the statute (Section 506.010 RSMo 1959, V.A. M.S.) call for fairness in the administration of justice and a just determination of every action, Baldwin v. Desgranges, 355 Mo. 959, 199 S.W.2d 353; Prudot v. Stevens, supra, and, as said in Edmondson v. Edmondson, Mo.App., 242 S.W.2d 730, l. c. 732, " * * * appeals are favored and statutes granting them must be liberally construed." To sustain Garnishee's Motion would have the effect of denying plaintiff's appeal. We deem it just and fair that Garnishee's Motion to Dismiss the Appeal should be denied.

We now focus our attention on the points relied on by plaintiff wherein he asserts the trial court erred in sustaining Garnishee's motion. In the first point we take up for discussion plaintiff contends that the order of the Illinois Court providing for rehabilitation of Mid-Union has no effect on his cause of action. By this he means that the part of the order of the Illinois Court wherein it enjoined and restrained all creditors and other persons having claims against Mid-Union from instituting any suit or proceeding intended for the purpose of obtaining a judgment against said company, and, also, from taking any action which would interfere with the rehabilitation of Mid-Union, was not binding upon plaintiff. In this connection it seems to be plaintiff's position that he is entitled to proceed with his action so that a judgment thereon may be accepted in the liquidation proceeding as conclusive of the existence and amount of his claim against Mid-Union and its Liquidator. In support of this contention plaintiff cites Morris v. Jones, 329 U.S. 545, 67 S.Ct. 451, 91 L.Ed. 488, and Rickman v. Rickman, 180 Mich. 224, 146 N.W. 609.

Before proceeding to discuss this contention, we should point out that plaintiff has not attacked or impeached the jurisdiction of the Illinois Court to enter the judgment and decree of rehabilitation, either as to the subject-matter or the persons before it. In fact, the jurisdiction is admitted, for the Liquidator is joined as a party in plaintiff's cause of action. Plaintiff in his petition has acknowledged the status of the Liquidator appointed under the decree of the Illinois Court.

It should also be noted that the judgment and order of rehabilitation entered by the Illinois Court was rendered prior to the institution of plaintiff's cause of action. The trial court's judgment and order sustaining Garnishee's motion indicates the court gave full faith and credit to the judgment and order of rehabilitation entered by the Illinois Court. We think the trial court was justified in doing so.

It is a well settled rule that where the transcript of the judgment is duly

authenticated according to the Act of Congress governing such matters and also shows that the court in which the cause was tried is a court of record and has a Presiding Judge and a Clerk attending upon the same, as well as a seal of the court, there is a presumption that such court is a court of general jurisdiction, and, that it had jurisdiction of the subject-matter of the action pending therein and of the parties thereto and in the absence of proof to the contrary, such presumption is conclusive. Morris v. Jones, supra; Riley v. New York Trust Co., 315 U.S. 343, 62 S.Ct. 608, 86 L.Ed. 885; Roche v. McDonald, 275 U.S. 449, 48 S.Ct. 142, 72 L.Ed. 365; State ex rel. Robb et al. v. Shain, 347 Mo. 928, 149 S.W.2d 812; Western Assurance Co. v. Walden, supra; O'Connell v. Smith, Mo.App., 131 S.W.2d 730; Seymour v. Newman, 77 Mo.App. 578.

Plaintiff has cited Morris v. Jones, supra, as an authority supporting his right to bring this cause of action. The facts in that case show that Chicago Lloyds, an unincorporated association, was authorized by the State of Illinois to transact an insurance business in Illinois. The pertinent facts set out in the opinion of the court are as follows:

"In 1934 petitioner sued Chicago Lloyds in a Missouri court for malicious prosecution and false arrest. In 1938, before judgment was obtained in Missouri, respondent's predecessor was appointed by an Illinois court as statutory liquidator for Chicago Lloyds. The Illinois court fixed a time for the filing of claims against Chicago Lloyds and issued an order staying suits against it. Petitioner had notice of the stay order but nevertheless continued to prosecute the Missouri suit. At the instance of the liquidator, however, counsel for Chicago Lloyds withdrew from the suit and did not defend it, stating to the Missouri court that the Illinois liquidation proceedings had vested all the property of Chicago Lloyds in the

liquidator. Thereafter petitioner obtained a judgment in the Missouri court and filed an exemplified copy of it as proof of his claim in the Illinois proceedings. An order disallowing the claim was sustained by the Illinois Supreme Court against the contention that its allowance was required by the Full Faith and Credit Clause. People ex rel. Jones v. Chicago Lloyds, 391 Ill. 492, 63 N.E.2d 479." (329 U.S. 1. c. 547, 67 S.Ct. 1. c. 453.)

That this case does not sustain plaintiff's position and is of no aid to him can be readily seen from the preliminary statement made by the Court wherein it disposed of certain irrelevant arguments pressed upon the Court. The Court said:

"* * * We are not dealing here with any question of priority of claims against the property of the debtor. For in this proceeding petitioner is not seeking, nor is respondent denying him, anything other than the right to prove his claim in judgment form. *No question of parity of treatment of creditors, or the lack thereof* (see Blake v. McClung, 172 U.S. 239, 19 S. Ct. 165, 43 L.Ed. 432), *is in issue.* Nor is there involved in this case any challenge to the Illinois rule, which follows Relfe v. Rundle, 103 U.S. 222, 26 L.Ed. 337, that title to all the property of Chicago Lloyds, wherever located, vested in the liquidator. Nor do we have here a challenge to the possession of the liquidator either through an attempt to obtain a lien on the property or otherwise. As pointed out in Riehle v. Margolies, 279 U.S. 218, 224, 49 S.Ct. 310, 312, 73 L.Ed. 669, the distribution of assets of a debtor among creditors ordinarily has a 'two-fold aspect.' *It deals 'directly* with the property' when it fixes the time and manner of distribution. *No one can obtain part of the assets or enforce a right to specific property in the possession of the liq-*

*uidation court except upon application to it.* But proof and allowance of claims are matters distinct from distribution. *They do not 'deal directly with any of the property'.* 'The latter function, which is spoken of as the liquidation of a claim, is strictly a proceeding in personam.' Id., 279 U.S. at page 224, 49 S.Ct. at page 313, 73 L.Ed. 669. The establishment of the existence and amount of a claim against the debtor in no way disturbs the possession of the liquidation court, in no way affects title to the property, and does not necessarily involve a determination of what priority the claim should have. And see Chicago Title & Trust Co. v. Fox Theatres Corp., 2 Cir., 69 F.2d 60, 91 A.L.R. 991." (Emphases ours.) (329 U.S. 1. c. 548–549, 67 S.Ct. 1. c. 454).

In the instant proceeding plaintiff is seeking more than the right to prove the existence and amount of his claim. There does exist a question of parity of treatment of creditors, for plaintiff seeks to have his claim enforced out of and paid by the property he has attached and reached in the garnishment. He is seeking to enforce a right to specific property that is now in the possession of the liquidation court. As the Supreme Court of the United States said in the case of Morris v. Jones, supra, an action to enforce a right to specific property can only be enforced in the liquidation court. This is not a proceeding where plaintiff's cause of action is strictly a proceeding in personam. As we said, plaintiff seeks to have his claim paid out of the property in the possession of the liquidator he has reached in his attachment and garnishment proceeding.

It is true that the court in the case of Morris v. Jones, supra, reversed the Illinois Supreme Court, however, it limited the effect of its decision when it said: "The single point of our decision is that the nature and amount of petitioner's claim has been conclusively determined by the Mis-

souri judgment and may not be relitigated in the Illinois proceedings, * * *." (329 U.S. 1. c. 554, 67 S.Ct. 1. c. 457). In a prefatory statement to the above, the court was careful to add: "But, as we have said, proof and allowance of claims are matters distinct from distribution of assets." (329 U.S. 1. c. 554, 67 S.Ct. 1. c. 457). Plaintiff's claim in the instant case is a matter affecting the distribution of assets now in the possession of the Liquidator.

Finally, in connection with our discussion of the case of Morris v. Jones, supra, strongly relied on by plaintiff, we deem it significant to point out one other matter, on which the court made comments, that has a bearing on the case under review here. It appears that Chicago Lloyds did not plead the order of the lower Illinois Court, particularly that part of the order staying suits against Chicago Lloyds, having withdrawn from the suit. In answering respondent's contention that the Illinois decree of which petitioner had notice, should have been given full faith and credit by the Missouri Court, the court said: "Roche v. McDonald, supra, 275 U.S. at pages 454–455, 48 S.Ct. at page 144, 72 L. Ed. 365, 53 A.L.R. 1141, makes plain that *the place to raise that defense was in the Missouri proceedings.* * * * the Missouri judgment is res judicata as to the nature and amount of petitioner's claim as against all defenses *which could have been raised.*" (Emphases ours.) (329 U.S. 1. c. 552, 67 S.Ct. 1. c. 456.)

■ In the case now under review Garnishee has pleaded the Order and Judgment of the Illinois Court and has raised the defense that plaintiff's action is stayed by the aforesaid order and judgment. The case of Morris v. Jones, supra, lends no support to plaintiff's contention. Plaintiff's action is not confined to a determination of the existence and amount of plaintiff's claim, but is one that affects the distribution of assets now in the possession of the Liquidator. Such an action must be

brought in the court appointing the Liquidator.

We fail to see where the other case relied on by plaintiff (Rickman v. Rickman, supra,) offers any support for his contention. Appellant in the Rickman case was appointed receiver of a copartnership by the Michigan Circuit Court. There was no order issued by the court, in chancery, restraining creditors from maintaining suits in Wisconsin. Prior to the appointment of the receiver, suits under a Wisconsin statute were brought in Wisconsin against the copartnership under a construction contract for the building of a courthouse. The Wisconsin statute permitted the general contractor for the project to be joined as a defendant and the suit under the statute had the effect of attaching any funds unpaid to the general contractor. The claims in favor of the subcontractors were allowed by the Wisconsin court.

One of the judgment holders filed a duly authenticated copy of the Wisconsin judgment in a proceeding in the receivership action pending in the Michigan Circuit Court, wherein he wanted to prove his right to a dividend in certain undistributed funds. The receiver contended that he should not participate pro rata in the distribution of these funds, having obtained part payment of his judgment from the funds attached in the State of Wisconsin. After pointing out that there was no order issued by the Circuit Court, in Chancery, restraining the claimant or other creditors from maintaining suits in Wisconsin, the Supreme Court of Michigan concluded its opinion with the following statement:

"It seems to us that the receiver bases its entire theory on the assumption that it made no difference whether the suits in Wisconsin were begun prior to the appointment of the receiver, or subsequently. We think there is a marked difference, and that a different rule should be applied. This court has held that, *after* the appointment of a receiver for an insolvent, the right of a creditor to sequester property by attachment, and thus gain priority, is suspended. Butler v. Wendell, 57 Mich. 62, 23 N.W. 460, 58 Am.Rep. 329." (146 N.W. l. c. 617.)

The record in the instant case shows that the Illinois Court issued an order enjoining and restraining "all creditors and other persons" from "instituting any suit or proceeding intended for the purpose of obtaining a judgment against the defendant corporation" and from interfering with the Liquidator's possession, control or title in or to the property of the corporation. The record in this appeal further shows that plaintiff's action was brought *after* the appointment of the statutory liquidator.

Our discussion of the case of Rickman v. Rickman, supra, brings to mind a distinction that should be made when considering these cases, between a receiver appointed as the result of a chancery proceeding who derives his power from the court's decree and a receiver or liquidator who derives his power from a statute under which the decree appointing him was rendered. This distinction is clearly shown in the case of McDonald v. Pacific States Life Ins. Co., 344 Mo. 1, 124 S.W.2d 1157, l. c. 1159, when the Supreme Court of this state said:

"In all those cases, so far as we have been able to find, the powers of receivers appointed in courts of chancery were under consideration. As to such a receiver the courts rightly hold that his power is derived from the decree appointing him and extends no farther than the territorial limits of jurisdiction of the court making the appointment. But the appellant liquidator in this case is more than a mere chancery receiver. He derives his power, not from the court's decree, but from the statute under which the decree was rendered. That statute is a part of the charter of the corporation, carried with it into every state in which

it owns property or does business. Under that statute, when the Colorado court found the corporation insolvent and placed it in liquidation, the statutory liquidator became the corporation itself; that is, he succeeded to all its rights and title to its property and can protect such rights and assert such title in the courts of all the states as a matter of right and not merely by comity."

Despite what is said in the authorities we have cited, plaintiff states that the title to the property in the hands of the Garnishee does not vest in the Liquidator and, therefore, he may enforce his claim against the property in the hands of the Garnishee, citing in support of this contention, Philadelphia National Bank v. New Jersey Fidelity & Plate Glass Ins. Co., 7 W.W.Harr. 174, 37 Del. 174, 181 A. 1. In the case cited the court did say that the title to the shares of stock involved did not vest in the statutory liquidator because the New Jersey Statutes did not vest the legal title to such property in such statutory liquidator.

The order of rehabilitation in the instant case, made a part of Garnishee's motion by reference, pleads the Illinois Insurance Code (Chap. 73, para. 613–1065.59 Illinois Revised Statutes 1957) and Art. XIII of said Code. Chapter 73 (Illinois Insurance Code) Sec. 803, Smith-Hurd Illinois Statutes specifically provides:

"The Director and his successor and successors in office shall be vested by operation of law with the title to all property, contracts and rights of action of the company as of the date of the order directing rehabilitation or liquidation. * * *"

The case of Relf v. Rundle, 103 U.S. 222, 26 L.Ed. 337, is one wherein the controversy was between certain parties representing Louisiana creditors and policyholders, on one side, and Relfe, the Missouri statutory representative of the Life Association of America (a Missouri corporation) and its property under a decree of dissolution, on the other, as to their respective rights as to what the appellees claimed were Louisiana assets belonging to Louisiana creditors. The court held that the Life Association's property passed to Relfe by operation of law and that he was charged with the duty of winding up its affairs. To the same effect, see Morris v. Jones, supra, and McDonald v. Pacific States Life Ins. Co., supra.

■ The right and title of the Liquidator under the Order and Judgment of Liquidation, entered by the Illinois Court, to the property and effects of Mid-Union became fixed on the date of the order and judgment by virtue of said order and judgment and the statutes of the State of Illinois. The Illinois Statutes have made the Liquidator the successor to the corporation and its property, Clark v. Williard, 292 U.S. 112, 1. c. 120, 54 S.Ct. 615, 78 L.Ed. 1160. The Illinois statutory Liquidator became the corporation itself; he succeeded to all its rights and title to its property. McDonald v. Pacific States Life Ins. Co., supra.

Significant to the case before us is the language of the Supreme Court of the United States in the case of Relfe v. Rundle, supra, when it said, in connection with its holding that the property of the corporation passed by operation of law to the Superintendent of the Insurance Department, that: "Every policyholder and *creditor* in Louisiana is charged with notice of this charter right which all interested in the affairs of the corporation can insist will be regarded." (Emphasis ours.) (103 U.S. 1. c. 226.)

It will be remembered that the insolvent Life Association of America was a Missouri corporation.

■ When considered in the light of the relief sought in the instant case, we think plaintiff was bound by the Order and Judgment of the Illinois Circuit Court, wherein it enjoined and restrained all creditors and other persons having claims against

Mid-Union from instituting any suit or proceeding. As we have indicated, this is particularly true and applicable where the purpose of the proceeding is an attempt to seize and control property which is in the possession of the Liquidator. Chicago Title & Trust Co. v. Fox Theatres Corp., supra. As we have pointed out before, we are not dealing with a proceeding that merely seeks to establish the existence and amount of plaintiff's claim. Some authorities hold, as we have shown, that such a suit may be prosecuted but if the relief sought in any way interferes with the possession of the property in the hands of the Liquidator and seeks to obtain any preference over any creditors, the claimant in such action must seek the administering assistance of the court appointing the Liquidator. Morris v. Jones, supra; Riehle v. Margolies, 279 U.S. 218, 49 S.Ct. 310, 73 L.Ed. 669; Hatch v. Morosco Holding Co., 2 Cir., 19 F.2d 766; Brunk v. Hamilton-Brown Shoe Co., 334 Mo. 517, 66 S.W.2d 903; 75 C.J.S. Receivers § 131b, p. 769.

■ It is the universal rule, in connection with the distribution of assets in possession of a court in a receivership proceeding, and especially where the proceeding has a statutory basis, that anyone who seeks the right to share in those assets is required to prove his claim in the court appointing the receiver or statutory liquidator. It is unnecessary to discuss the many cases so holding, some of which we cite, and to discuss them would only serve to unduly lengthen this opinion. Morris v. Jones, supra; Riehle v. Margolies, supra; Hatch v. Morosco Holding Co., supra; Brunk v. Hamilton-Brown Shoe Co., supra; Attorney General v. Supreme Council, A.L.H., 196 Mass. 151, 81 N.E. 966; 75 C.J.S. Receivers §§ 129 and 130, p. 767.

■ In one of the points relied on by plaintiff he has included therein what seems to be a subordinate contention to his main point. He states that "the Missouri creditor should be allowed to enforce his claim against property [of the Illinois Liquidator] in another state (Missouri) in the courts of such state * * *." In this contention plaintiff seems to seek enforcement of the rule that the courts of each state will first protect the citizens of that state as against the residents of another state. While this rule has been applied under some circumstances, it has no application where the assets of an insolvent insurance company are concerned. The public policy of this state, where the assets of an insolvent insurance company are involved, was clearly stated by the Supreme Court of this State in McDonald v. Pacific States Life Ins. Co., 344 Mo. 1, 124 S.W.2d 1157, l. c. 1162, 1163:

> "We believe that the weight of authority is that the assets of insolvent insurance companies should be treated as a unit, and disposed of for the benefit of all creditors ratably without regard to the location of the assets or the residence of creditors. Insurance companies cannot, as commercial corporations, partnerships, and individuals may, take the benefit of bankruptcy laws and must submit to dismemberment and waste unless receivers are appointed to preserve their assets for the benefit of all their creditors. Clark v. Williard, 292 U.S. 112, loc. cit. 123, 54 S.Ct. 615, 78 L.Ed. 1160. Insurance companies if successful, must do business and make investments in many states. To permit the property of insolvent insurance companies to be subjected to the claims of the most diligent creditors in each of the states where such assets may be located, would result in the dissipation of such assets and the subjection of the same to the claims of the most diligent creditors in preference not only to the creditors of other states, but in preference to the claims of other creditors in the same state.
>
> "We believe that the legislative enactments of Missouri indicate a con-

trary policy. * * * They provide for the equitable and ratable distribution of the assets to all the creditors without regard to location of assets or residence of creditors.

\* \* \* \* \* \*

" * * * Respondent is not contending for the right to have his claim paid in the order set forth in the Missouri statute. He is attempting to have his claim paid in full in preference to all other claims, even as to administration expense and taxes. If this is permitted, the order of payment of creditors residing outside the State of the corporation's domicile will depend upon the diligence of such creditors and their good fortune in locating assets. If Missouri adopts such a policy, why cannot other states do likewise? If such policy be generally followed, since most insurance companies are domiciled and their assets located outside of Missouri, in the long run a great injury to Missouri citizens will result. In the absence of laws in other states discriminating against Missouri creditors we do not believe that such is or should be the policy of Missouri in the dissolution of insolvent insurance companies."

To the same effect, see Martyne v. American Union Fire Ins. Co. of Philadelphia, 216 N.Y. 183, 110 N.E. 502.

■ From what we have said, it becomes abundantly clear that assets in the hands of a statutory liquidator are not subject to attachment or garnishment. 75 C.J.S. Receivers § 135, pp. 773, 774, 775; Rickman v. Rickman, supra.

■ The final contention of plaintiff is that he had an attorney's lien on the $5000 which was in the possession of the Garnishee. It seems that what we have said regarding the other contentions advanced by plaintiff disposes of this contention, viz., that any proceeding that seeks a preference in the distribution of prop-

erty and assets, the title to which is in the Liquidator, must be brought in the court administering the property and assets. However, assuming, without holding, that plaintiff may bring a proceeding in this state, it is the contention of the Garnishee that under the record, as disclosed by the transcript filed in this court, "a lien did not and does not exist."

Plaintiff in his brief states that "plaintiff-appellant gave notice of his attorney's lien as provided by Missouri law, Sections 484.130, 484.140, Revised Statutes of Missouri (1949), * * *." Under the provisions of Section 484.130 an attorney has a lien upon his client's cause of action or counterclaim, which attaches to a verdict in his client's favor. However, before such a lien attaches, the attorney must commence an action or serve an answer containing a counterclaim. The sum of $5000 which plaintiff states Garnishee owes defendants was not the result of the commencement of an action or the filing of a counterclaim. It was, as alleged in plaintiff's petition, the result of an agreement to settle a subrogation claim. Plaintiff's petition does not allege the commencement of an action.

Section 484.140 RSMo 1949, 27 V.A. M.S., provides for a notice in writing to be served on the proposed defendant or defendants, wherein an attorney states that he has a contract with his client for legal services and that he is to receive a certain portion or percentage of the proceeds of any settlement of his client's claim. Upon service of such notice the attorney has "a lien upon the claim or cause of action, and upon the proceeds of any settlement thereof * * *."

Plaintiff's petition contains no allegations showing a compliance with this section of the statutes. The only reference in plaintiff's petition to an attorney's lien is that plaintiff was informed "that defendants refused to recognize the attorney's lien of plaintiff * * *." This is not an allegation showing facts of the ex-

istence of a lien, but is merely one showing that defendants were asserting that plaintiff did not have a lien. In the two Missouri authorities cited by plaintiff the attorneys had instituted suits and recovered judgments, therefore, the facts in those cases are not analogous to those of the instant case.

The Garnishee's Motion to Dismiss the Appeal is denied. The Order and Judgment of the trial court is affirmed.

ANDERSON, P. J., and ELGIN T. FULLER, Special Judge, concur.